Attorney Grievance Comm'n v. Vernon Charles Donnelly, Misc. Docket AG No. 3, September Term, 2016

**ATTORNEY DISCIPLINE – SANCTIONS – THIRTY-DAY SUSPENSION –** Court of Appeals suspended from practice of law in Maryland for thirty days lawyer who was a member of, and counsel for, limited liability company, and engaged in actions not authorized by the company. Lawyer filed complaint for partition of property against one of company's members and assigned client's property rights to trust, identifying himself as trustee, failed to provide complaint and assignment of contract rights to members who owned majority of company, failed to communicate changes to fee agreement and to have contingent fee agreement signed by members who owned majority of company, and failed to move to dismiss case and promptly surrender papers upon termination of his representation. Such conduct violated Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.2(a) (Allocation of Authority Between Client and Lawyer), 1.4(a)(2) (Communication Generally), 1.5(b), 1.5(c) (Communication of Fees), 1.16(a)(3), 1.16(d) (Terminating Representation), and 8.4(a) (Violating MLRPC).

Circuit Court for Prince George's County
Case No. CAE16-12078

Argued: October 6, 2017

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 3

September Term, 2016

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

VERNON CHARLES DONNELLY

_____

Barbera, C.J.
Greene
Adkins
McDonald
Watts
Hotten
Getty,

JJ.

_____

Opinion by Watts, J.

_____

Filed: February 15, 2018

This attorney discipline proceeding involves a lawyer who was a member of a limited liability company and had been designated as the company's counsel. As counsel for the company, the lawyer, who had no prior history of disciplinary action, in a lapse of judgment, apparently brought about by his dual role as counsel and a member of the company, engaged in actions not authorized by the company. The lawyer filed a complaint for partition of property against one of the company's members who owned property jointly with the company, and drafted and executed a document assigning the company's property to a trust, appointing himself as the trustee. The lawyer failed to provide the complaint and assignment to the company, failed to communicate changes to a fee agreement and to have a contingent fee agreement signed by members who owned a majority of the company, and failed to move to dismiss the partition case and promptly surrender the company's papers upon the termination of his representation.

Vernon Charles Donnelly, Respondent, a member of the Bar of Maryland, was one of six people who formed Solomons One, LLC. The other five people were: Deborah Steffen, who is Donnelly's girlfriend; Dr. Alfred Greenberg and Halina Greenberg, who are spouses; and Christine McNelis and Catherine Erickson-File. Solomons One's members signed a Memorandum of Understanding and Agreement ("the MOU"), in which Solomons One retained Donnelly as its counsel. Solomons One's purpose was to purchase and develop a piece of real property that was adjacent to the Patuxent River. Solomons One and McNelis acquired ownership interests in the property; Solomons One owned a 70% interest in the property, and McNelis owned a 30% interest. Donnelly and Steffen owned an adjoining property. It was Donnelly's understanding that he, Steffen, Solomons

One, and McNelis had the right to build a pier over the Patuxent River, adjacent to the two properties. On behalf of himself and Solomons One, Donnelly submitted to Calvert County and the State a joint application to build such a pier. Ultimately, Calvert County and the State denied the joint application.

Solomons One's members debated whether to sue Calvert County and the State to secure its right to build a pier. Donnelly drafted, and he and Steffen signed, an Attorney-Client Agreement, naming Solomons One as the client and Donnelly as the attorney for Solomons One. On behalf of himself and Solomons One, Donnelly filed a complaint against Calvert County and the State, seeking the right to build a pier. Donnelly contended that he forwarded to the members of Solomons One a cover letter describing the Attorney-Client Agreement, with the Agreement and the complaint as attachments. While the pier rights litigation was pending, Donnelly drafted an Assignment of Contract Rights, in which Solomons One purportedly assigned its right to build a pier to Donnelly to hold as a trustee for Solomons One's members. The Assignment of Contract Rights changed the contingency fee arrangement that was set forth in the Attorney-Client Agreement. Donnelly and Steffen were the only members of Solomons One who signed the Assignment of Contract Rights.

On Solomons One's behalf, Donnelly filed a complaint against McNelis, seeking a partition of the property owned by Solomons One and McNelis. Subsequently, at a meeting of Solomons One's members, members who owned a majority of Solomons One voted to revoke the MOU and discharge Donnelly as Solomons One's counsel. Donnelly, however, continued to act on Solomons One's behalf in the pier rights litigation. Donnelly's position

was that, although the revocation of the MOU terminated him as Solomons One's counsel for general purposes, the Attorney-Client Agreement independently authorized him to continue to represent Solomons One in the pier rights litigation. This litigation was ultimately successful, with Solomons One gaining the right to build a pier.

Jennifer Kneeland, counsel for the Greenbergs, and Laurence W.B. Cumberland, counsel for Erickson-File and McNelis, filed complaints against Donnelly with Bar Counsel. In the complaints, Kneeland and Cumberland alleged that, among other misconduct, Donnelly acted without Solomons One's authorization in continuing to represent Solomons One in the pier rights litigation, drafting and executing the Assignment of Contract Rights, and filing the complaint to seek a partition of Solomons One's and McNelis's property.

On March 29, 2016, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" against Donnelly, charging him with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") 1.2 (Scope of Representation and Allocation of Authority Between Client and Lawyer), 1.4 (Communication), 1.5(a), (b), and (c) (Fees), 1.7 (Conflict of Interest: General Rule), 1.8(i) (Conflict of Interest: Current Clients: Specific Rules: Proprietary Interest), 1.13 (Organization as Client), 1.15(a) and (d) (Safekeeping Property), 1.16(a) and (d) (Terminating Representation), 3.1 (Meritorious Claims and Contentions), 3.3(a)(1) and (2) (Candor Toward the Tribunal), 4.2(a) (Communication with Person Represented by Counsel), 4.4(a) (Respect for Rights of Third Persons), 8.1 (Disciplinary Matters), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct

That Is Prejudicial to the Administration of Justice), and 8.4(a) (Violating the MLRPC).[1]

On April 7, 2016, this Court designated the Honorable Nicholas E. Rattal ("the hearing judge") of the Circuit Court for Prince George's County to hear this attorney discipline proceeding. Between February 13, 2017 and April 4, 2017, on thirteen non-consecutive days, the hearing judge conducted a hearing. On June 20, 2017, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, concluding that Donnelly had violated MLRPC 1.2, 1.4, 1.5, 1.8(i), 1.13(a), 1.15(d), 1.16(a)(3) and (d), 3.1, 3.3(a)(1), 8.1, and 8.4(c), (d), and (a), but had not violated MLRPC 1.7, 4.2(a), 4.4(a), or 8.4(b).

On October 6, 2017, we heard oral argument. For the below reasons, we suspend Donnelly from the practice of law in Maryland for thirty days.

## BACKGROUND

The hearing judge found the following facts, which we summarize. In May 1982, this Court admitted Donnelly to the Bar of Maryland. Donnelly maintains an office for the practice of law in Solomons, Maryland.

### Donnelly's Purchase of Property

In 1993, Donnelly purchased a property at 14532 Solomons Island Road in Solomons, Maryland, next to the Patuxent River. Subsequently, Donnelly learned that his property and a property adjacent, 14538 Solomons Island Road ("the Property"), included

---

[1]Effective July 1, 2016, the MLRPC were renamed the Maryland Attorneys' Rules of Professional Conduct, or MARPC, and renumbered. We will refer to the MLRPC because the alleged misconduct occurred before this change.

the right to build a commercial pier. In 1995, Donnelly began a personal relationship with Steffen. At some point, Steffen acquired an ownership interest in the property that Donnelly had purchased at 14532 Solomons Island Road.

## The Operating Agreement

On June 1, 2005, Donnelly, Steffen, the Greenbergs, Erickson-File, and McNelis signed an Operating Agreement ("the Operating Agreement"), creating Solomons One. Solomons One's purpose was to develop, manage, lease, and sell real property. Solomons One had six members, each with the following interests: Donnelly, 24 1/3%, Steffen, 24%, the Greenbergs jointly, 48 1/3%, Erickson-File, 2 1/3%, and McNelis, 1%.

> The Operating Agreement provided for decision-making as follows:
>
> The Members, acting jointly, shall have the right to manage the business of [Solomons One], including, but not limited to, establishing and reviewing rental arrangements concerning the Property, encumbering, pledging, conveying[,] and otherwise dealing with any or all of the Property, borrowing funds (executing confessed judgment notes in connection therewith)[,] and operating [Solomons One's] business. **Management decisions shall be approved by majority vote of the members.**

(Emphasis added). Each member's vote counted for the percentage of Solomons One that he or she owned.[2] The Operating Agreement specifically stated that management decisions, including whether to engage in litigation, must be "approved by a majority vote of the members."

---

[2]Md. Code Ann., Corps. & Ass'ns (1975, 2014 Repl. Vol.) § 4A-403(b), part of the Maryland Limited Liability Company Act, states: "(1) Members shall vote in proportion to their respective interests in profits of the limited liability company . . . . (2) Decisions concerning the affairs of the limited liability company shall require the consent of members holding at least a majority of the interests in profits of the limited liability company[.]" (Paragraph break omitted).

The Operating Agreement advised each member to seek independent counsel to review the agreement, as follows:

> The parties hereto acknowledge that this Operating Agreement has been drafted by [] Donnelly[], who is a member of [Solomons One], at the request of the Members. [] Donnelly[] has not acted as counsel for the individual members[,] and each Member acknowledges that he or she has been advised to seek their own independent attorney as to their rights and obligations under this [Operating] Agreement. Each member acknowledges that he or she has retained other counsel to review . . . this [Operating] Agreement. Each member acknowledges that[,] entering into this [Operating] Agreement, he or she has not relied upon the legal advice of [] Donnelly, nor has [] Donnelly acted as their legal counsel for this matter. Likewise, [] Donnelly[], has not provided any member with advice as to any estate issues arising from th[is Operating] Agreement or the impact of this [Operating] Agreement on a member's individual estate planning.

At the disciplinary hearing, all of Solomons One's members, except Donnelly, testified that they knew that they had the opportunity to engage independent counsel regarding the Operating Agreement, but decided not to do so.

**The MOU**

On August 10, 2005, Donnelly, Steffen, the Greenbergs, Erickson-File, and McNelis, on Solomons One's behalf, and Donnelly, individually, signed the MOU. The MOU provided that Donnelly would be Solomons One's counsel, and that he could be terminated upon written notice from a member. The MOU acknowledged that Donnelly's appointment as counsel involved a conflict of interest, as Donnelly was a member of Solomons One. The hearing judge found that Steffen, the Greenbergs, Erickson-File, and McNelis understood that there was a conflict of interest with regard to Donnelly's representation of Solomons One, and "expressly waived such conflict of interest" by signing the MOU.

**Solomons One's Purchase of Property and the Joint Venture Agreement**

In August 2005, Solomons One purchased the Property at 14538 Solomons Island Road. BB&T Bank loaned the money for the purchase. Solomons One's members were the loan's guarantors. On August 12, 2005, Solomons One and McNelis entered into a Joint Venture Agreement, pursuant to which Solomons One acquired a 70% interest in the Property, while McNelis acquired a 30% interest in the Property. The Joint Venture Agreement stated that, if Solomons One filed for bankruptcy, McNelis would have the option to purchase the Property.

**Joint Application to Build Pier and Initial Discussions of Possible Pier Litigation**

Between 2008 and 2012, Donnelly had intermittent conversations with Solomons One's other members regarding the Property's pier rights. Eventually, Donnelly submitted a joint application to Calvert County and the State to build such a pier. Donnelly testified that he had Solomons One's consent to submit the joint application. Calvert County and the State denied the joint application.

Thereafter, Solomons One's members discussed whether Solomons One should pursue litigation to secure its right to build a pier. On April 3, 2012, Donnelly e-mailed Dr. Greenberg regarding Solomons One's right to build a pier. Dr. Greenberg responded: "I love the idea." On July 12, 2012, Donnelly again e-mailed Dr. Greenberg regarding Solomons One's right to build a pier. Dr. Greenberg testified that he could not recall whether, in response to Donnelly's July 12, 2012 e-mail, he authorized Donnelly to engage in litigation to secure Solomons One's right to build a pier. Dr. Greenberg testified: "I believe [that] I had taken a stand [that] we were not interested in pier rights." On July 14,

2012, Mrs. Greenberg sent an e-mail in which she stated that engaging in litigation to secure Solomons One's right to build a pier would be a "fool's errand[.]" In the same e-mail, Mrs. Greenberg stated that she did not want to pay any attorney's fees that would result from such litigation.

Daniel Guenther, Erickson-File's and McNelis's counsel, testified that he was certain that he did not authorize Donnelly to represent Solomons One, McNelis, and/or Erickson-File in litigation to secure Solomons One's right to build a pier. Guenther did not recall telling Donnelly to protect Erickson-File's and McNelis's interests in Solomons One's right to build a pier.

On July 31, 2012, Dr. Greenberg e-mailed Donnelly, stating: "[W]e should not incur further expenses[.]" On August 2, 2012, Dr. Greenberg e-mailed Donnelly, stating: "[W]e have decided not to participate in the pursuit of the pier rights for" the Property. On August 7, 2012, however, Dr. Greenberg e-mailed Donnelly, stating:

> I have been in touch with [McNelis] and [Erickson-File] and rethinking the pier rights question. They will be consulting their attorney on the 9th. . . . However, it looks like we will be going forward with this, so let me know what has to be done on this end. So do we need agreements between us, et cetera. . . [W]e'll do what is necessary as per your instructions.

(Second ellipsis in original). Dr. Greenberg testified that he ultimately decided to move forward with litigation to secure Solomons One's right to build a pier to increase the value of the Property, as well as the value of Solomons One itself.

The hearing judge found that members who owned a majority of Solomons One authorized Donnelly to pursue litigation to secure its right to build a pier. Those members were Donnelly, Steffen, and Dr. Greenberg.

**Attorney-Client Agreement**

On August 21, 2012, Donnelly and Steffen signed an Attorney-Client Agreement as "Member[s] and Operating Manager[s]" of Solomons One. In the Attorney-Client Agreement, Solomons One purportedly retained Donnelly to represent it in litigation to secure its right to build a pier. The Attorney-Client Agreement provided for a contingency fee, stating: "If there is no recovery, no fees are due from [Solomons One]."

On August 22, 2012, Donnelly made a handwritten alteration to the Attorney-Client Agreement. The Attorney-Client Agreement, contained in the record, addressed fees, with certain parts crossed out by hand, as follows:

> [Solomons One] agrees to retain [Donnelly] under a contingency fee agreement, ~~plus a fixed reimbursement for attorney['s] fees and costs[,]~~ explained as follows: A. ~~If a recovery, [Solomons One] agrees to pay [Donnelly] from any recovery $12,000 in attorney['s] fees and costs;~~ and B. ~~Additionally,~~ if a recovery, [Solomons One] agrees that [Donnelly] is entitled to 33 1/3% of any settlement or amount recovered by a decision or settlement at the Circuit Court level, or 40% of any settlement of an amount recovered by decision at the appellate court level.

The hearing judge found that Donnelly and Steffen testified that the Greenbergs did not see "the final version of the" Attorney-Client Agreement. No meeting of Solomons One's members was held to discuss the Attorney-Client Agreement. Although Dr. Greenberg authorized Donnelly to pursue litigation to secure Solomons One's right to build a pier, Dr. Greenberg testified that he did not think that Donnelly should have been paid for pursuing such litigation, as Solomons One's members had agreed to contribute their time, effort, and professional expertise toward Solomons One's objectives. Steffen testified that she was privy to a conversation in which the Greenbergs authorized the

Attorney-Client Agreement. Consistently, Donnelly testified that, during a telephonic conversation, Dr. Greenberg authorized him to execute the Attorney-Client Agreement.

Dr. Greenberg could not remember a telephonic conversation with Donnelly in which he authorized the Attorney-Client Agreement. Dr. Greenberg denied that he had received a copy of the Attorney-Client Agreement with the handwritten changes on it. Dr. Greenberg denied that he had authorized Donnelly "to act as an attorney for [Solomons One] in executing the" Attorney-Client Agreement. Mrs. Greenberg testified "that she did not discuss the fee agreement with anyone." Erickson-File testified that she was shocked and angered when she saw the Attorney-Client Agreement. Erickson-File denied agreeing to pay Donnelly for pursuing litigation to secure Solomons One's right to build a pier. Similarly, McNelis denied that she had authorized the Attorney-Client Agreement.

Guenther testified that he had not, on Erickson-File's and McNelis's behalf, authorized Donnelly to enter into the Attorney-Client Agreement. Immediately after quoting a portion of Guenther's testimony, the hearing judge found "that Bar Counsel's witnesses were more credible than [Donnelly]'s witnesses[,] and that the Attorney[-]Client Agreement was not authorized." The hearing judge found that members who owned a majority of Solomons One did not authorize the Attorney-Client Agreement. The hearing judge also found that Donnelly's "attempt to bind [Solomons One] to [the] Attorney[-]Client Agreement was [] done in a dishonest and deceitful manner."

### Start of Pier Case

In the Circuit Court for Calvert County ("the circuit court"), Donnelly filed a complaint, initiating litigation to secure Solomons One's right to build a pier ("the Pier

- 10 -

Case"). Donnelly contended that he mailed to the Greenbergs a letter dated August 23, 2012, a copy of the complaint in the Pier Case, and the Attorney-Client Agreement. The hearing judge found that Dr. Greenberg testified that he did not recall receiving Donnelly's August 23, 2012 letter, the complaint in the Pier Case, or the Attorney-Client Agreement. The hearing judge found that Dr. Greenberg testified that he received a letter from Donnelly dated September 1, 2012, as well as billing statements. Dr. Greenberg did not remember contacting Donnelly about his September 1, 2012 letter, and testified that he did not "believe" that he had communicated with Donnelly in September 2012.

Donnelly kept Solomons One's other members updated regarding the Pier Case by sending them correspondence and pleadings. Donnelly sent the Greenbergs, Erickson-File, and McNelis letters in which he described developments in the Pier Case. Additionally, starting in September 2012, Donnelly sent Solomons One's other members monthly statements that detailed the legal services that he was providing on Solomons One's behalf. In the monthly statements Donnelly listed Solomons One as the client.

### Assignment of Contract Rights

On or about December 4, 2012, Donnelly prepared an Assignment of Contract Rights, under which Donnelly would "act as trustee[,]" and hold the right to build a pier in trust for Solomons One's members, including himself. The Assignment of Contract Rights provided for $8,000 in attorney's fees and costs, as well as a contingency fee. On December 4, 2012, Donnelly and Steffen signed the Assignment of Contract Rights.

The hearing judge found that Donnelly testified that members who owned a majority of Solomons One authorized him to execute the Assignment of Contract Rights. At the

disciplinary hearing, as a witness for Donnelly, Patricia Davis, his secretary, testified that, while she was at her desk outside Donnelly's office, she heard Dr. Greenberg tell Donnelly to proceed with the Assignment of Contract Rights. The hearing judge found, however, that there were "reasons to doubt that Davis could have been able to hear and/or understand what [the Greenbergs said], and whether her recollections of the conversation were based on what [Donnelly] and Steffen told her about the conversation." For example, in an affidavit that was submitted to Bar Counsel during the investigation in this attorney discipline proceeding, Davis averred:

> I was able to overhear [] Donnelly and [] Steffen's responses during this telephone conversation between [] Donnelly and Dr. Greenberg. I could determine that [] Dr. Greenberg agreed and authorized [] Donnelly to prepare the Assignment of Contract Right[s.] . . . [] Donnelly and I also had a conversation about the telephone call[,] and[,] during that conversation, [] Donnelly reconfirmed that Dr. Greenberg was in agreement to assign the commercial pier right from Solomons One [] to [its] individual members and that[,] together with the Greenbergs, [] Steffen and [] Donnelly, it was a majority vote to assign the commercial pier right[s].

In the affidavit, Davis did not aver that she could hear what the Greenbergs were saying, or that the telephonic conversation was on speakerphone. The hearing judge determined that the affidavit demonstrated that Donnelly and Steffen were the sources of Davis's recollection of the Greenbergs' role in the conversation.

Steffen testified that she was privy to a telephonic conversation in which Donnelly and the Greenbergs discussed the assignment of Solomons One's right to build a pier. In an affidavit that was submitted during Solomon One's bankruptcy proceeding—which is discussed below—Steffen averred that the telephonic conversation was not on speakerphone. Steffen averred, however, that she was "present" during the telephonic

conversation and could hear it. Steffen averred that, based on the telephonic conversation and Donnelly's reaction, she knew that the Greenbergs had agreed to the assignment of Solomons One's right to build a pier.

By contrast, the Greenbergs, Erickson-File, and McNelis testified that they did not authorize Donnelly to execute the Assignment of Contract Rights. The Greenbergs, Erickson-File, and McNelis testified that they did not know about the Assignment of Contract Rights until May or June 2013, when McNelis found it while searching the land records of Calvert County. McNelis testified that she was "shocked" to find the Assignment of Contract Rights. Guenther, Erickson-File's and McNelis's counsel, testified that he never authorized Donnelly "to do anything."

The hearing judge found that Bar Counsel's witnesses were more credible than Donnelly's witnesses on the issue of whether Donnelly was authorized to execute the Assignment of Contract Rights. In other words, the hearing judge found that the Assignment of Contract Rights was unauthorized. The hearing judge also found that Donnelly's "conduct with regard to the Assignment [of Contract Rights] was dishonest as to [Solomons One], the Greenbergs, McNelis[,] and Erickson-File, in that he used it to divest [Solomons One] of an asset and establish a trust enabling him to pursue the [Pier Case] without acting as" Solomons One's counsel.

Donnelly did not send a copy of the Assignment of Contract Rights to the Greenbergs, McNelis, Erickson-File, or Guenther. Donnelly testified that he did not provide the Assignment of Contract Rights to the Greenbergs because they preferred to leave matters to attorneys, and "they had a small place." Donnelly sent Erickson-File and

McNelis a letter dated December 11, 2012, attached to which were nine documents that were related to the Pier Case. Donnelly did not mention the Assignment of Contract Rights in his December 11, 2012 letter, nor in subsequent letters to Erickson-File and McNelis dated February 26, 2013, April 8, 2013, May 7, 2013, May 30, 2013, and July 18, 2013. On December 28 and 30, 2012, Donnelly communicated with the Greenbergs, Erickson-File, and McNelis. In those communications, Donnelly did not mention the Assignment of Contract Rights, or that he was acting as a trustee for himself and Solomons One's other members.

On December 28 or 29, 2012, in an e-mail that was addressed to McNelis and also sent to Solomons One's other members, Donnelly stated:

> [With regard] to the [P]ier [C]ase[, y]ou will recall that I tried to get your involvement[,] but you decided to follow [] Guenther's advice. The [Pier Case] was filed on behalf of [Solomons One's] member[s'] interests, not on behalf of your individual interest in the property. Hopefully[,] Guenther took action to preserve your individual interest. If not[,] there may be a limitations bar. That said, I can think of several possible ways to address that issue[,] but I am not your attorney.

Donnelly did not mention the Assignment of Contract Rights in this e-mail. The hearing judge found that Donnelly's statements in this e-mail were inconsistent with Donnelly's position that McNelis's individual interest in Solomons One's right to build a pier had been assigned to him effective December 4, 2012, and that Donnelly was a trustee for McNelis's interest.

### Donnelly's Filings in Pier Case After Assignment of Contract Rights

After executing the Assignment of Contract Rights on December 4, 2012, Donnelly continued to act as counsel for the plaintiffs in the Pier Case, including himself and

Solomons One. On December 13, 2012, in the Pier Case, Donnelly filed a motion for summary judgment, a memorandum in support of the motion for summary judgment, and a statement of material facts not in dispute. On March 21, 2013, Donnelly filed a motion to compel discovery. On April 4, 2013, Donnelly filed another motion to compel discovery. On April 15, 2013, Donnelly filed a motion for sanctions and a motion to shorten time.

## Confession of Judgment[3] Case

In August 2012, having notified Solomons One's other members that they would do so, Donnelly and Steffen stopped making monthly contributions to Solomons One. In September 2012, the Greenbergs, Erickson-File, and McNelis also stopped making monthly contributions to Solomons One. After August 2012, Solomons One stopped making payments to BB&T Bank, which had loaned the money for Solomons One's purchase of the Property. In March 2013, BB&T Bank filed a complaint against Solomons One and its members, seeking a confession of judgment ("the Confession of Judgment Case").

On April 20, 2013, Donnelly e-mailed Solomons One's other members, suggesting that he file, on Solomons One's behalf, a motion to vacate in the Confession of Judgment Case. Donnelly testified that he did not receive a reply to his April 20, 2013 e-mail. Donnelly testified, however, that the Greenbergs authorized him to file a motion to vacate

---

[3]A confession of judgment is "[a] judgment taken against a debtor by the creditor, based on the debtor's written consent." Confession of Judgment, Black's Law Dictionary (10th ed. 2014).

- 15 -

in the Confession of Judgment Case. Dr. Greenberg testified that he could not recall whether he authorized Donnelly to file a motion to vacate. In April 2013, in the Confession of Judgment Case, on Solomons One's behalf, Donnelly filed a motion to vacate BB&T Bank's Confession of Judgment. Donnelly believed that doing so was within his authority as Solomons One's counsel, and was in Solomons One's best interest.

**Partition Case**

On May 2, 2013, in the circuit court, on Solomons One's behalf, Donnelly filed a complaint against McNelis, seeking a partition of the Property ("the Partition Case"). At the disciplinary hearing, Steffen testified that she was "present" during a telephonic conversation in which Dr. Greenberg authorized Donnelly to file the complaint in the Partition Case. The Greenbergs testified, however, that they did not authorize Donnelly to file the complaint. Dr. Greenberg did not recall seeing a copy of the complaint. Mrs. Greenberg testified that Donnelly filed the complaint without her knowledge. The hearing judge found that Donnelly did not consult with Solomons One's other members before filing the complaint in the Partition Case, and that Donnelly was not authorized to file the complaint.

**May 17, 2013 Meeting of Solomons One's Members and Aftermath**

Kneeland, the Greenbergs' counsel, assisted Dr. Greenberg in setting up a meeting of Solomons One's members, the purpose of which was to discharge Donnelly as Solomons One's counsel. On or about May 3, 2013, Donnelly was notified that a meeting of Solomons One's members had been scheduled for May 9, 2013. Donnelly was informed that the meeting's purpose was to discuss revoking the MOU. At Donnelly's request, the

meeting was postponed to May 17, 2013. On May 16, 2013, Donnelly recorded the Assignment of Contract Rights in the land records of Calvert County. On May 17, 2013, the meeting of Solomons One's members, including Donnelly, occurred. Members who owned a majority of Solomons One voted to revoke the MOU and terminate Donnelly as Solomons One's counsel. Donnelly and Steffen voted not to do so. At the meeting, Solomons One's members could not agree on who would succeed Donnelly as Solomons One's counsel. At the meeting, the Pier Case was not discussed, and Donnelly did not mention the Attorney-Client Agreement or the Assignment of Contract Rights.

On the same day as the meeting, with Kneeland's assistance, Dr. Greenberg e-mailed Donnelly, stating: "As a follow-up to today[']s meeting of Solomons One, [] please send a note to the members terminating your representation as counsel to Solomons One [] as of today[.]" Donnelly replied: "No. The minutes reflect what happened."

In discussing the May 17, 2013 meeting of Solomons One's members, the hearing judge concluded that Donnelly "did not withdraw the [P]artition [Case], despite being requested to do so." On or about June 12, 2013, Kneeland and Solomons One's new counsel mailed Donnelly a cease-and-desist letter. In a letter to Kneeland dated June 19, 2013, Donnelly stated that he had filed the complaint in the Partition Case to protect Solomons One's interests, and to fulfill his responsibilities as Solomons One's counsel. As to the May 17, 2013 meeting, Donnelly stated:

> As you know, [Solomons One's] members voted to terminate me as counsel for [Solomons One]. [] Steffen and I (48 1/3% membership interest) disagreed with that action. As of [May 17, 2013], I ceased my legal representation as counsel for [Solomons One] pending the members' selection of new, independent counsel for [Solomons One]. By agreement

- 17 -

and practice, the selection of counsel for [Solomons One] is by unanimous consent of the members.

The hearing judge determined that, in so stating, Donnelly recognized that, as of May 17, 2013, he was no longer authorized to speak or act on Solomons One's behalf.

Donnelly did not participate in Solomons One's other members' efforts to retain new counsel for Solomons One. In mid-July 2013, the members of Solomons One other than Donnelly agreed to retain Ralph Powers as Solomons One's new counsel.

## Proceedings in the Pier Case

Donnelly did not inform the circuit court of his discharge as counsel for Solomons One, and continued to act as Solomons One's counsel in the Pier Case. On May 30, 2013, in the Pier Case, Donnelly filed a supplemental memorandum of law in support of a motion for declaratory judgment. On June 17, 2013, the circuit court conducted a hearing in the Pier Case. Donnelly appeared at the hearing on behalf of the plaintiffs, including himself and Solomons One. At the conclusion of the hearing, the circuit court granted summary judgment in favor of the plaintiffs, determining that the plaintiffs had a right to build a pier. A hearing on damages was scheduled for October 16, 2013. On July 24, 2013, in the Pier Case, on behalf of himself, Solomons One, and the other plaintiffs, Donnelly filed a motion for entry of final judgment.

## Complaint for Dissolution and the Start of Bankruptcy Case

In or before August 2013, Donnelly filed a complaint for dissolution of Solomons

One.[4]

On August 23, 2013, in the United States Bankruptcy Court for the District of Maryland, Solomons One filed a petition for Chapter 11 bankruptcy, initiating a bankruptcy proceeding ("the Bankruptcy Case"). Donnelly had opposed filing the petition for bankruptcy protection, noting that, under the Joint Venture Agreement, if Solomons One filed for bankruptcy, McNelis had the option to buy the Property. The filing of the petition in the Bankruptcy Case resulted in an automatic stay in all other cases that involved attempts to exercise control over Solomons One's property, including the Pier Case.[5]

**Further Proceedings in the Pier Case**

On September 3, 2013, in the Pier Case, Donnelly filed a "substitution of the trustee for" Solomons One. Donnelly testified that Maryland Rule 2-241 (Substitution of Parties)[6] required him to file the substitution of the trustee because an appeal was pending in the

---

[4]Md. Code Ann., Corps. & Ass'ns (1975, 2014 Repl. Vol.) § 4A-903, part of the Maryland Limited Liability Company Act, states:

> On application by or on behalf of a member, the circuit court of the county in which the principal office of the limited liability company is located may decree the dissolution of the limited liability company whenever it is not reasonably practicable to carry on the business in conformity with the articles of organization or the operating agreement.

[5]11 U.S.C. § 362 is entitled "Automatic Stay." Under 11 U.S.C. § 362(a)(3), the filing of a petition for Chapter 11 bankruptcy protection "operates as a stay, applicable to all entities, of . . . any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]"

[6]Maryland Rule 2-241(a)(6) states: "The proper person may be substituted for a party who . . . if a . . . trustee, resigns[ or] is removed[.]" Maryland Rule 2-241(d) states: "If substitution is not made as provided in this Rule, the court may dismiss the action[.]"

Pier Case.[7]  Donnelly's filing of the substitution of the trustee was the first time that he advised the circuit court that Solomons One was no longer the party in interest in the Pier Case.  On October 16, 2013, on behalf of the plaintiffs in the Pier Case, Donnelly appeared before the circuit court, which conducted a status conference rather than a hearing on damages.

In the Pier Case, Solomons One's bankruptcy counsel filed a motion to strike Donnelly's appearance ("the Motion to Strike").  In September 2013, Donnelly filed an opposition to the Motion to Strike.  Donnelly testified that he opposed the Motion to Strike because, in the Motion to Strike, Solomons One's counsel had alleged that Donnelly had engaged in fraud, conversion, and malpractice.

### Proceedings in the Bankruptcy Case

In the Bankruptcy Case, Donnelly filed a motion to dismiss on the ground that the decision to file the petition for bankruptcy protection had not been unanimous.  Donnelly filed the motion to dismiss in his capacity as a member of Solomons One, not in his capacity as an attorney.  As of October 28, 2013, Donnelly had failed to provide Solomons One's papers and files to its new counsel.  As a result, on or before that date, in the Bankruptcy Court, Solomons One's counsel filed a motion to compel turnover.  In an Order dated October 30, 2013, the Bankruptcy Court denied the motion to dismiss, concluding that

---

[7]Consistent with Donnelly's assertions in the substitution of the trustee, in September 2013, in the monthly statements that detailed the legal services that he provided on Solomons One's behalf, Donnelly stopped referring to Solomons One as the client; started referring to Solomons One's members as the clients; and started referring to himself as a trustee.

majority vote, not unanimous consent, was sufficient for Solomons One to file the petition for bankruptcy protection.  The Bankruptcy Court "ruled that [Donnelly]'s actions [in the Pier Case] were a violation of the automatic stay" that had resulted from the Bankruptcy Case.

## Donnelly's Correspondence with Bar Counsel

Kneeland and Cumberland filed complaints against Donnelly with Bar Counsel. Bar Counsel asked Donnelly for a response to Kneeland's and Cumberland's complaints. At the disciplinary hearing, Donnelly testified that he made truthful statements to Bar Counsel in his responses to Kneeland's and Cumberland's complaints.

In a letter to Bar Counsel dated August 27, 2013, Donnelly stated that he had "served as counsel for Solomons One[] from August, 2005 until discharged by [Solomons One's] members on May 17, 2013."  The hearing judge found that Donnelly's statement was false because, after being discharged as Solomons One's counsel on May 17, 2013, Donnelly continued to represent Solomons One in the Pier Case.  According to the hearing judge, in his August 27, 2013 letter to Bar Counsel, Donnelly stated that the Attorney-Client Agreement was authorized by the Greenbergs, Erickson-File, and McNelis.  The hearing judge found that this statement was false.  Nonetheless, elsewhere in his opinion, the hearing judge stated that, during the hearing, "Bar Counsel did not specifically identify statements [in Donnelly's letters to Bar Counsel that] it contended were false."

## Aggravating Factors and Mitigating Factors

The hearing judge found that Donnelly's misconduct was aggravated by a pattern of misconduct, multiple violations of the MLRPC, and a refusal to acknowledge his

misconduct's wrongful nature. The hearing judge found that Donnelly's misconduct was mitigated by the circumstances that the Assignment of Contract Rights did not cause substantial financial harm to Solomons One, and that Donnelly was successful in the Pier Case.

## STANDARD OF REVIEW

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact, and reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(2)(B) ("The Court [of Appeals] shall give due regard to the opportunity of the hearing judge to assess the credibility of witnesses."); Attorney Grievance Comm'n v. Chanthunya, 446 Md. 576, 588, 133 A.3d 1034, 1041 (2016) ("This Court reviews for clear error a hearing judge's findings of fact." (Cleaned up)); Md. R. 19-741(b)(1) ("The Court of Appeals shall review de novo the [hearing] judge's conclusions of law."). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MLRPC. See Md. R. 19-727(c) ("Bar Counsel has the burden of proving the averments of the petition [for disciplinary or remedial action] by clear and convincing evidence.").

## DISCUSSION

### (A) Donnelly's Request for New Hearing

In his exceptions to the hearing judge's findings of fact and conclusions of law, Donnelly contends that Bar Counsel engaged in improprieties before and during the hearing, and that, as a result of these improprieties, he should be afforded a "fair" hearing, *i.e.*, a new hearing.

Donnelly contends that Bar Counsel failed to conduct an independent investigation of Kneeland's and Cumberland's complaints against him. Donnelly points out that, before the filing of the Petition for Disciplinary or Remedial Action, none of Bar Counsel's investigators interviewed him, his staff, or any other member of Solomons One. Donnelly asserts that Bar Counsel simply relied on information that had been provided by Kneeland and Cumberland, who lacked personal knowledge of the substance of the allegations against him. Donnelly maintains that Bar Counsel essentially "became the litigation arm for" the Greenbergs during the pending lawsuits that involved Solomons One's members.

Donnelly contends that Bar Counsel inappropriately dismissed a complaint against another attorney who represented Erickson-File and McNelis in a matter. Donnelly argues that the complaint against the other attorney included allegations that were identical to those in Kneeland's and Cumberland's complaints against him—namely, that the other attorney filed pleadings on Solomons One's behalf without authorization.

Donnelly asserts that Bar Counsel engaged in discovery violations. Donnelly alleges that, before the hearing, Bar Counsel failed to disclose the existence of papers that Guenther, Erickson-File's and McNelis's former counsel, had provided to Cumberland, Erickson-File's and McNelis's current counsel. Donnelly also alleges that the hearing judge refused to allow him to inspect these papers. According to Donnelly, Bar Counsel acknowledged that the papers included the August 23, 2012 letter from Donnelly to Guenther, to which the Attorney-Client Agreement was attached. Donnelly maintains that, by using information from the papers at the disciplinary hearing without having provided them to him, Bar Counsel violated discovery rules and Donnelly's right to due process.

Donnelly contends that it was improper for Bar Counsel to call Guenther as a rebuttal witness at the disciplinary hearing, as Bar Counsel did not offer Guenther's testimony in response to a matter that arose during Donnelly's presentation of evidence. Donnelly argues that, due to this alleged impropriety, this Court should not consider Guenther's testimony.

In Donnelly's response to Bar Counsel's exceptions, and at oral argument, Donnelly's counsel asserted that Donnelly had lacked sufficient notice of the allegations that he made false statements in his letters to Bar Counsel. Donnelly's counsel observed that, in the Petition for Disciplinary or Remedial Action, Bar Counsel alleged as follows: "In his responses to Bar Counsel's requests for responses to [Kneeland's and Cumberland's] complaints, [Donnelly] knowingly made misleading and inconsistent statements." Donnelly's counsel noted that Donnelly filed a response to the Petition for Disciplinary or Remedial Action, in which he contended that the above language was vague, and moved for a more definite statement.[8]

---

[8]Donnelly's counsel stated that, in a response to an interrogatory by Donnelly, Bar Counsel identified the alleged false statement in Donnelly's letters to Bar Counsel as his assertion that Solomons One lacked a right to build a pier. Donnelly's counsel asserted that Bar Counsel's response to this interrogatory prevented the hearing judge from making a finding that "Donnelly made a misleading or inconsistent statement" as to any other matter. Under Maryland Rule 2-433(a)(2),

[u]pon a motion filed under Rule 2-432(a), the court, if it finds a failure of discovery, may enter such orders in regard to the failure as are just, including . . . [a]n order refusing to allow the failing party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence[.]

Donnelly's counsel observed that the hearing judge stated that, during the hearing, "Bar Counsel did not specifically identify statements [in Donnelly's letters to Bar Counsel that] it contended were false." Donnelly's counsel noted that, nonetheless, the hearing judge concluded that Donnelly had violated MLRPC 8.1 (Disciplinary Matters) and 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation) by making false statements to Bar Counsel. Donnelly's counsel observed that the hearing judge also concluded that Donnelly had also violated MLRPC 8.4(c) by executing the Attorney-Client Agreement and the Assignment of Contract Rights without authorization. Donnelly's counsel argued that these conclusions by the hearing judge are invalid because, in the Petition for Disciplinary or Remedial Action, Bar Counsel failed to specify any false statements by Donnelly—whether in his letters to Bar Counsel or otherwise.

Donnelly requests that we "take appropriate action to provide [him] with a fair [hearing] and full disclosure by Bar Counsel." At oral argument, Donnelly's counsel clarified that he requests that we remand this attorney discipline proceeding and designate a new hearing judge, who would conduct the hearing.

In this case, we do not find persuasive the grounds on which Donnelly asserts that a new hearing is warranted. Donnelly does not bring to our attention any authority that supports his contentions that a new hearing is warranted because of alleged flaws in Bar

---

As such, at the disciplinary hearing, pursuant to Maryland Rule 2-432(a), Donnelly could have moved to preclude other claims of dishonesty, but did not do so. In any event, this Court does not uphold the hearing judge's conclusions of law as to Donnelly's alleged violations of MLRPC 3.3(a)(1), 8.1(a), and 8.4(c). Thus, Bar Counsel's failure to fully respond to Donnelly's interrogatory has no effect on the outcome of the case.

Counsel's investigation, or because Bar Counsel chose not to charge another lawyer for allegedly similar misconduct. Bar Counsel's decision not to charge another lawyer has no bearing on the question of whether Donnelly violated the MLRPC. Although the allegation that Bar Counsel failed to conduct an independent investigation is worrisome, it is not a defense to Donnelly's alleged violations of the MLRPC that Bar Counsel allegedly did not conduct a thorough investigation. Any MLRPC violations that this Court concludes are supported by clear and convincing evidence are substantiated by the hearing judge's findings of fact, testimony from the disciplinary hearing, and other evidence in the record.

Similarly, Donnelly's allegations concerning Bar Counsel's discovery violations are troubling, but do not persuade us that a new hearing is warranted. Donnelly challenges his inability to obtain papers that Guenther forwarded to Cumberland's law firm—*i.e.*, documents that pertained to Guenther's representation of Erickson-File and McNelis. For the most part, Donnelly does not identify the documents that he sought from Cumberland's law firm, or why the documents would have been helpful to his case. A document is not discoverable if it is subject to the attorney-client privilege or the work product doctrine. See E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc., 351 Md. 396, 407, 414, 718 A.2d 1129, 1134, 1138 (1998).[9] Because Donnelly does not explain the nature of the documents that he sought, it is impossible to determine whether the attorney-client privilege and the

_____

[9] "The work product doctrine protects from discovery the work of an attorney done in anticipation of litigation or in readiness for trial." E.I. du Pont de Nemours, 351 Md. at 407, 718 A.2d at 1134 (citation omitted). The attorney-client privilege "prevents the disclosure of a confidential communication made by a client to his [or her] attorney for the purpose of obtaining legal advice." Id. at 414, 718 A.2d at 1138 (citation omitted).

work product doctrine would apply to these documents. In a limited instance, Donnelly specifically contends that one of the documents he was prohibited from obtaining is an August 23, 2012 letter to Guenther notifying him of the Attorney-Client Agreement. As explained below, we conclude that Dr. Greenberg received the letter dated August 23, 2012 describing the Attorney-Client Agreement and accepted Donnelly's services under the Attorney-Client Agreement. For this reason, the hearing judge's alleged failure to cause disclosure of Donnelly's August 23, 2012 letter to Guenther, containing similar information, did not affect the outcome of the case.

In his exceptions, Donnelly mistakenly relies on Wright v. State, 349 Md. 334, 708 A.2d 316 (1998), and State v. Booze, 334 Md. 64, 637 A.2d 1214 (1994), for the proposition that Guenther's testimony as a rebuttal witness merits a new hearing. Wright, 349 Md. at 354, 708 A.2d at 326, and Booze, 334 Md. at 80, 637 A.2d at 1222, are criminal cases in which this Court held that trial courts abused their discretion in allowing the State to call rebuttal witnesses under certain circumstances. Wright and Booze do not stand for the proposition that an allegedly improper rebuttal witness entitles a respondent in an attorney discipline proceeding to a new hearing. Indeed, in Wright, 349 Md. at 342, 708 A.2d at 319, and Booze, 334 Md. at 69, 637 A.2d at 1217, this Court noted that, in a criminal case, one of the factors in an analysis of whether the State improperly called a rebuttal witness is "whether the jury would be likely to give undue emphasis" to the rebuttal witness's testimony. (Citations omitted). Such a concern is nonexistent in attorney discipline proceedings, in which hearing judges, not juries, are the finders of fact.

At oral argument, Donnelly's counsel relied on In re Ruffalo, 390 U.S. 544 (1968) and Bar Ass'n of Balt. City v. Cockrell, 270 Md. 686, 313 A.2d 816 (1974) for the proposition that Donnelly is entitled to a new hearing due to insufficient notice of the allegations that he made false statements to Bar Counsel. In Ruffalo, 390 U.S. at 552, 545, 550, the Supreme Court of the United States reversed an order of disbarment where the attorney received insufficient notice of the charges against him. During an attorney discipline proceeding in Ohio, the disciplinary authority charged the attorney with an additional violation of the ethical rules. See id. at 546. Ultimately, based in part on that violation, the Supreme Court of Ohio disbarred the attorney. See id. at 547.[10] In a reciprocal discipline proceeding, a United States Court of Appeals also disbarred the attorney. See Ruffalo, 390 U.S. at 545. The Supreme Court noted that, in an attorney discipline proceeding, an attorney is "entitled to procedural due process, which includes fair notice of the charge." Id. at 550 (citation omitted). The Supreme Court observed that the attorney had no notice that he would be charged with the additional violation of the ethical rules until after he testified at the hearing. See id. at 550-51. The Supreme Court concluded that the lack of notice deprived the attorney of his right to due process. See id. at 552.

---

[10]In the opening paragraph of its opinion, the Supreme Court stated that the attorney "was ordered indefinitely suspended from the practice of law by the Supreme Court of Ohio[.]" Ruffalo, 390 U.S. at 545. Later in the opinion, however, the Supreme Court stated that the Supreme Court of Ohio "concluded that the two violations required disbarment." Id. at 547. The sanction the Supreme Court of Ohio imposed does not affect the above analysis.

In Cockrell, 270 Md. at 692-93, 313 A.2d at 819, this Court reversed a hearing judge's finding that an attorney had misappropriated his client's funds because the Bar Association of Baltimore City[11] had not charged the respondent with "that particular misconduct" in the petition. In the petition, the Bar Association of Baltimore City alleged that the attorney's client had denied receiving any money from the attorney after a settlement was reached in the client's civil case. See id. at 688, 313 A.2d at 817. The judicial panel found that the attorney misappropriated his client's funds by cashing a check from an insurance company, and then failing to convey the funds to his client. See id. at 691, 313 A.2d at 819.

This Court observed that, under a predecessor to current Maryland Rule 19-721(b), "the charges shall be in writing and shall be sufficiently clear and specific reasonably to inform the attorney proceeded against of any misconduct charged[.]" Cockrell, 270 Md. at 692, 313 A.2d at 819 (parentheses omitted). This Court explained:

> While [Maryland Rule 19-721(b)'s predecessor] does not require that the charges be set forth in any certain form or in extensive detail, it does establish a requirement that the charges be 'sufficiently clear and specific' so as to make the attorney aware of what he [or she] is compelled to answer for and defend against. In fact[,] any rule which did not require this degree of specificity would violate the minimum requirements of constitutional due process mandated by Article 23 of the Maryland Declaration of Rights.

Id. at 692, 313 A.2d at 819 (citation and footnote omitted). In Cockrell, id. at 693, 313 A.2d at 820, this Court concluded that the Bar Association of Baltimore City had failed to comply with Maryland Rule 19-721(b)'s predecessor because it had not charged

---

[11]Before the Office of Bar Counsel was created, bar associations were responsible for enforcing ethical rules.

misappropriation in the petition "in any form[.]"  This Court determined that it did not matter that the judicial panel's finding of misappropriation was "largely" based on the attorney's testimony.  <u>Cockrell</u>, 270 Md. at 693, 313 A.2d at 820.  This Court granted the Bar Association of Baltimore City's request for leave to amend the petition by adding a charge for misappropriation.  <u>See id.</u> at 693, 313 A.2d at 820.  This Court, however, observed that the attorney would have the opportunity to raise an objection based on <u>Ruffalo</u>, 390 U.S. 544.  <u>See Cockrell</u>, 270 Md. at 693, 313 A.2d at 820.

At oral argument, Donnelly's counsel contended that this attorney discipline proceeding is analogous to <u>Ruffalo</u> and <u>Cockrell</u> because Donnelly lacked sufficient notice of allegations regarding false statements.  Maryland Rule 19-721(b) states in pertinent part: "The petition shall be sufficiently clear and specific to inform the attorney of any professional misconduct charged[.]"  Here, in the Petition for Disciplinary or Remedial Action, Bar Counsel alleged the documents that contained false statements by Donnelly in violation of MLRPC 8.1 were his responses to Kneeland's and Cumberland's complaints against him.  In the Petition, Bar Counsel also alleged that Donnelly violated MLRPC 8.4 because he had not been authorized to execute the Attorney-Client Agreement or the Assignment of Contract Rights.  Although these allegations by Bar Counsel do not identify the particular false statements attributable to Donnelly, the allegations are specific enough to provide adequate notice of the nature of the alleged violations.

**(B) Findings of Fact**

Donnelly and Bar Counsel except to multiple findings of fact by the hearing judge.

**Finding That Attorney-Client Agreement Was Unauthorized**

Donnelly contends that the hearing judge clearly erred in finding that members who owned a majority of Solomons One did not authorize him to execute the Attorney-Client Agreement. Donnelly observes that, on August 7, 2012, Dr. Greenberg e-mailed him, stating that he wanted to move forward with litigation to secure Solomons One's right to build a pier, and asking whether any agreements were needed. Donnelly argues that Dr. Greenberg's August 7, 2012 e-mail shows that Dr. Greenberg expected to enter into an attorney-client agreement. Donnelly asserts that the evidence shows that, on August 23, 2012, he sent the Attorney-Client Agreement to the Greenbergs, who never questioned him about it. Donnelly maintains that the lack of any objection by Dr. Greenberg to the Attorney-Client Agreement shows that he authorized the agreement. In other words, Donnelly contends that Dr. Greenberg's silence operated as acceptance of the Attorney-Client Agreement. Bar Counsel responds that, based on Dr. Greenberg's testimony that he did not recall a conversation in which he authorized the Attorney-Client Agreement, it is reasonable to infer that no such conversation ever occurred. Bar Counsel argues that the hearing judge correctly determined that silence alone was insufficient for Dr. Greenberg to have authorized the Attorney-Client Agreement.

We conclude that the hearing judge did not clearly err to the extent that he found that members who owned a majority of Solomons One did not expressly authorize Donnelly to execute the Attorney-Client Agreement. That conclusion, however, does not end our inquiry. We must determine whether the hearing judge was correct in concluding that the Attorney-Client Agreement was not accepted by virtue of the circumstance that,

after executing the agreement, Donnelly provided notice of the agreement to Dr. Greenberg, who received the benefit of Donnelly's legal services, and did not object to the Attorney-Client Agreement. Donnelly contends that, on August 23, 2012, he sent to Dr. Greenberg a cover letter describing the Attorney-Client Agreement. Donnelly argues that, upon receipt of the August 23, 2012 letter, Dr. Greenberg did not respond or object in any way to the Attorney-Client Agreement. Donnelly asserts that Solomons One—and, by extension, its members, including Dr. Greenberg—benefitted from Donnelly's legal services in the Pier Case.

It is undisputed that Donnelly and Steffen were in favor of the Attorney-Client Agreement, and that they signed the agreement on August 21, 2012. For there to have been a majority, at least one of the Greenbergs (who jointly owned 48 1/3% of Solomons One) and/or Erickson-File (who owned 2 1/3%) must also have been in favor of the Attorney-Client Agreement. At the disciplinary hearing, the Greenbergs, Erickson-File, and Guenther testified that they did not authorize Donnelly to sign the Attorney-Client Agreement, and the hearing judge found their testimony on this point to be more credible than Donnelly's witnesses. These circumstances compel the conclusion that the hearing judge did not clearly err to the extent that he found that members who owned a majority of Solomons One did not expressly permit Donnelly to execute the Attorney-Client Agreement. A hearing judge does not clearly err in finding a fact where "there is any competent evidence to support the" finding of fact. Attorney Grievance Comm'n v. Merkle, 440 Md. 609, 633, 103 A.3d 679, 693 (2014) (citation omitted).

Although Donnelly was not explicitly authorized to sign the Attorney-Client

- 32 -

Agreement, it does not necessarily follow that Dr. Greenberg did not later accept the Attorney-Client Agreement. If Solomons One's members received the signed Attorney-Client Agreement or notice of the agreement, did not object, and received the benefit of Donnelly's offer of legal services, then Solomons One's members' silence constituted acceptance of the agreement. As this Court explained in Porter v. Gen. Boiler Casing Co., 284 Md. 402, 412, 396 A.2d 1090, 1095-96 (1979):

> Silence can [] operate as acceptance. Where services are rendered under such circumstances that the party benefited thereby knows the terms on which they are being offered, **if he [or she] receives the benefit of the services in silence**, when he [or she] had a reasonable opportunity to express his [or her] rejection of the offer, he [or she] is assenting to the terms proposed and thus accepts the offer.

(Emphasis added) (cleaned up). Similarly, in Cochran v. Norkunas, 398 Md. 1, 23-24, 919 A.2d 700, 714 (2007), this Court stated:

> Silence is generally not to be considered an acceptance of an offer unless the parties had agreed previously that silence would be an acceptance, **the offeree has taken the benefit of the offer**, or because of previous dealings between the parties, it is reasonable that the offeree should notify the offeror if she does not intend to accept.

(Emphasis added) (citations omitted).

In this case, the hearing judge admitted into evidence a letter dated August 23, 2012—*i.e.*, two days after Donnelly and Steffen signed the Attorney-Client Agreement, and one day after Donnelly crossed out the language that provided for "a fixed reimbursement for attorney['s] fees and costs" in the amount of $12,000. The letter was signed by Donnelly, and addressed to the Greenbergs. In the letter, Donnelly stated that he had enclosed a copy of the Attorney-Client Agreement, that he had waived any upfront

fees, and that his fee would strictly be on a contingency basis. Specifically, in the August

23, 2012 letter to the Greenbergs, Donnelly provided the following information about the

Attorney-Client Agreement:

> I also enclose a copy of the Attorney[-Client] Agreement for Solomons One[]. You will note [that] I have waived the request for payment of immediate escrow amounts for the [a]ttorney[′s] fee and [c]osts. I have made payment for those amounts due from any recovery. I have made payment for those amounts due from any recovery. The attorney contingency fee remains in place[,] and the customary rates. In the event [that] there is no recovery, then there is no payment due from [Solomons One] or the members. I am shouldering myself the hourly attorney[′s] fee and costs from my own pocket. Candidly, I would rather have a member sue me for recovering money for [Solomons One], th[a]n sue me for not taking any action to protect [Solomons One]′s asset.

The hearing judge found: "Dr. Greenberg testified that he did not recall receiving a

copy of [Donnelly]′s August 23, 2012 letter, the complaint[ in the Pier Case,] and [the]

Attorney-Client Agreement." In his exceptions, Donnelly states:

> The [h]earing [j]udge is clearly erroneous that [Solomons One] did not have knowledge of the terms of the [] Attorney[-]Client Agreement and that [Solomons One] did not accept the terms thereof. The evidence proved that the Greenbergs, McNelis[,] Erickson-File, and [] Guenther, all received a copy of the August 23, 2012 [l]etters enclosing and explaining the [] Attorney-Client Agreement and Complaint filed in the Pier [Case]. . . . The evidence in Bar Counsel′s case[-]in[-]chief prove[d] that the Attorney-Client Agreement was executed by two members of [Solomons One] on behalf of [Solomons One], and was then sent to [Solomons One′s other] members on August 23, 2012 with cover letters, which letters were admittedly received by the members. . . . No member questioned [] Donnelly concerning the Pier [Case] or the Attorney-Client Agreement[,] despite admitting receipt of numerous communications. . . . Even assuming that Dr. Greenberg testified entirely truthfully that he could not recall what he authorized and what enclosures he received from [] Donnelly, the written communications between [] Donnelly and the members[, which] the members admit to receiving[,] specifically reference and explain the Attorney-Client Agreement. . . . [T]he [h]earing [j]udge′s finding of fact that the Attorney[-]Client Agreement was not authorized . . . is clearly erroneous.

Donnelly's contention that Dr. Greenberg received his August 23, 2012 letter directly contradicts the hearing judge's finding that Dr. Greenberg testified that he did not recall receiving Donnelly's August 23, 2012 letter. Thus, we must determine whether the hearing judge's finding that Dr. Greenberg testified that he did not recall receiving Donnelly's August 23, 2012 letter is accurate.

As a threshold matter, we observe that the hearing judge did not find that Dr. Greenberg did not receive Donnelly's August 23, 2012 letter. Instead, the hearing judge found only that Dr. Greenberg testified that he did not recall receiving the letter. Contrary to the hearing judge's finding, the record reflects that Dr. Greenberg testified as follows about his receipt of the August 23, 2012 letter:

> [ASSISTANT BAR COUNSEL:] That is a -- appears to be a letter dated August 23 of 2012. Do you see that?
>
> [DR. GREENBERG:] Yes.
>
> [ASSISTANT BAR COUNSEL:] All right. Is that a copy of a letter that you received from [] Donnelly?
>
> [DR. GREENBERG:] Yes. Yes.
>
> [ASSISTANT BAR COUNSEL:] All right. As of August 23 of 2012, had you told [] Donnelly that you were authorizing him to pursue the pier rights on behalf of [Solomons One]?
>
> [DR. GREENBERG:] No.
>
> [ASSISTANT BAR COUNSEL:] Had you told him that you had agreed to authorize him to enter into a contingency fee agreement on behalf of [Solomons One]?
>
> [DR. GREENBERG:] No.

[ASSISTANT BAR COUNSEL:] All right.  I would like to move Number 15, Your Honor.  1.15.

As the August 23, 2012 letter was being admitted into evidence, Bar Counsel advised the hearing judge that, although the existence of enclosures such as the Attorney-Client Agreement were in dispute, the August 23, 2012 letter was not.  Bar Counsel stated:

> [ASSISTANT BAR COUNSEL]: Your Honor, [Dr. Greenberg] is going -- well, I don't want to say what he is going to testify to.  There is a dispute whether or not there w[ere] enclosures with the letter, but certainly, the letter itself is not in dispute.  Number 15.
>
> [HEARING JUDGE]: So you say you're not opposed to the letter coming in?
>
> [DONNELLY'S COUNSEL]: That's correct.
>
> [HEARING JUDGE]: Okay.  Let me read the letter so I know -- I turned to it, but I don't know what it says. (Reviewing exhibit.)
> Okay.  Interesting.  This is a letter from [] Donnelly to the Greenbergs which is 1.15.  It references enclosures.  It re[]states -- I'm guessing, because I don't know what the enclosures are – re[]states stuff that's in the enclosures.

Thereafter, the hearing judge stated: "If -- well, right now, there -- I guess at this point, there is a factual dispute as to whether the enclosures were in the letter or not, even though I don't know if that's directly asked."  After that, the record reflects that Dr. Greenberg again testified in a manner that indicated he received the August 23, 2012 letter, but had not previously authorized the Attorney-Client Agreement:

> [ASSISTANT BAR COUNSEL]: Prior to receiving this letter on August the 23rd of 2012, had you told [] Donnelly that you had agreed to an attorney-client fee agreement with him?
>
> [DR. GREENBERG:] No.

In his opinion, immediately after finding that Dr. Greenberg testified that he did not

recall receiving the letter, the hearing judge referenced portions of the testimony from the disciplinary hearing that occurred after the above exchanges. In the first portion of the testimony that the hearing judge referenced, the following exchange occurred:

> [DONNELLY'S COUNSEL:] The question, Dr. Greenberg, is, is it your testimony that you did not receive a package with a letter, a copy of the complaint and a copy of the Attorney-Client Agreement in or around late August 2012?
>
> [DR. GREENBERG:] You would have to show me something in that package. I don't recall. I mean, I'm just saying, I don't -- I don't -- I don't know how to answer that question.
> Is there something I can refer to in this book over here?
>
> [DONNELLY'S COUNSEL:] Dr. Greenberg, at any time, did you notify [] Donnelly, after August 23rd, 2012, that you did not receive a letter from him or a copy of the pier rights complaint or a copy of an Attorney-Client Agreement as stated in this August 23rd, 2012 e-mail to you?
>
> [DR. GREENBERG:] I don't recall.

In the second portion of the testimony that the hearing judge referenced, the following exchange occurred:

> [DONNELLY'S COUNSEL:] Is it your contention -- is it your testimony that you did not receive any enclosures with this August 23rd, 2012[] letter that you testified you received?
>
> [DR. GREENBERG:] I don't recall.
>
> [DONNELLY'S COUNSEL:] You don't recall whether or not there were enclosures?
>
> [DR. GREENBERG:] I don't know how to answer your question.
>
> [DONNELLY'S COUNSEL:] Do you remember if there were enclosures when you received this letter that is dated August 23rd, 2012?
>
> [DR. GREENBERG:] I do not remember enclosures.

Upon review of the record, we conclude that the hearing judge clearly erred in finding solely that Dr. Greenberg testified that he did not recall receiving Donnelly's August 23, 2012 letter. To the contrary, Dr. Greenberg explicitly testified that he received the letter, and Bar Counsel acknowledged that the letter was not in dispute. The hearing judge's finding that Dr. Greenberg testified that he did not recall receiving the letter does not involve a determination of credibility by the hearing judge. Rather, the record reflects that the hearing judge failed to account for Dr. Greenberg's testimony that he received Donnelly's August 23, 2012 letter. Our independent review of Dr. Greenberg's testimony leads to the conclusion that clear and convincing evidence supports a determination that Dr. Greenberg testified that he received the August 23, 2012 letter, but did not recall receiving the enclosures.[12]

In sum, on August 21, 2012, Donnelly and Steffen executed the Attorney-Client Agreement. Donnelly alleges that, in separate letters dated August 23, 2012, he informed the Greenbergs and Guenther that he had enclosed copies of the Attorney-Client Agreement. In his August 23, 2012 letter to Dr. Greenberg, Donnelly described the fee

---

[12]The hearing judge admitted into evidence another letter dated August 23, 2012, signed by Donnelly, and addressed to Guenther. In the letter, Donnelly stated that he had enclosed a copy of the Attorney-Client Agreement. Donnelly testified that he did not receive a response to his August 23, 2012 letter to Guenther. Guenther testified that could not recall whether he received Donnelly's August 23, 2012 letter to him—but, if he did, he would have put it in his file regarding his representation of McNelis and Erickson-File, which he gave to Cumberland. Cumberland acknowledged receiving Guenther's file, but was not asked about Donnelly's August 23, 2012 letter to Guenther.

arrangement, and addressed the waiver of upfront fees under the Attorney-Client Agreement. Dr. Greenberg acknowledged that he received Donnelly's August 23, 2012 letter to him and Mrs. Greenberg. Significantly, Dr. Greenberg did not testify that, after receiving Donnelly's August 23, 2012 letter, he responded to the letter in any way or told Donnelly that he objected to the Attorney-Client Agreement.

Given that the Greenbergs testified that they did not see or receive the Attorney-Client Agreement, we cannot say that the hearing judge clearly erred in finding that Donnelly did not send, and the Greenbergs did not receive, the Attorney-Client Agreement. That does not, however, prevent us from concluding that Dr. Greenberg received notice of the Attorney-Client Agreement via Donnelly's August 23, 2012 letter describing the Attorney-Client Agreement. Based on the record, it is undisputed by Bar Counsel that Dr. Greenberg received Donnelly's August 23, 2012 letter, in which he described the Attorney-Client Agreement and the contingency fee for which it provided.

A person accepts an offer of services through silence where the person knows the terms on which the services are offered, receives the benefit of the services, and does not reject the offer despite having a reasonable opportunity to do so. See Porter, 284 Md. at 412, 396 A.2d at 1095-96; Cochran, 398 Md. at 23-24, 919 A.2d at 714. Here, in his August 23, 2012 letter to the Greenbergs, Donnelly made clear the terms on which he offered legal services. Specifically, Donnelly offered to represent Solomons One in the Pier Case in exchange for a specified contingency fee. It is undisputed that Solomons One—and, by extension, its members—received the benefit of Donnelly's legal services in the Pier Case.

In sum, we do not find that the hearing judge clearly erred in finding as a factual matter that Solomons One's members did not authorize the Attorney-Client Agreement. We are mindful that MLRPC 1.5(c) provides that contingent fee agreements must be in writing and signed by the clients. Nothing in this opinion abrogates or undermines MLRPC 1.5(c). However, under the circumstances presented in this case, the Attorney-Client Agreement was accepted by Dr. Greenberg after his receipt of Donnelly's August 23, 2012 letter, notifying him of the existence of the Attorney-Client Agreement and its relevant terms with respect to attorney's fees. Dr. Greenberg received the benefit of the legal services that Donnelly provided to Solomons One. Indeed, Solomons One ultimately prevailed in the Pier Case, in which the circuit court entered a declaratory judgment that Solomons One had a right to build a pier. See Donnelly v. State, No. 04-C-12-001031, 2013 WL 10257429, at *1 (Md. Cir. Ct. Calvert Cty. July 12, 2013).

**Finding That Assignment of Contract Rights Was Unauthorized**

Donnelly excepts to the hearing judge's finding that members who owned a majority of Solomons One did not authorize Donnelly to execute the Assignment of Contract Rights. Donnelly contends that, based on his communications with Dr. Greenberg, he had a good-faith belief that Dr. Greenberg had authorized the Assignment of Contract Rights. Donnelly acknowledges that he did not provide the Assignment of Contract Rights to Erickson-File and McNelis, and maintains that he believed that it was in Solomons One's best interest to keep the Assignment of Contract Rights from Erickson-File and McNelis.

We conclude that the hearing judge did not clearly err in finding that the Assignment of Contract Rights was unauthorized. The Greenbergs, McNelis, and

- 40 -

Erickson-File testified that they did not authorize Donnelly to execute the Assignment of Contract Rights. The Greenbergs, Erickson-File, and McNelis testified that they did not even realize that the Assignment of Contract Rights existed until McNelis found it while searching the land records of Calvert County. Although Donnelly, Davis (his secretary), and Steffen testified that, during a telephonic conversation, Dr. Greenberg authorized the Assignment of Contract Rights, the hearing judge pointed out inconsistencies in Davis's testimony, and found that Donnelly and Steffen were the sources of Davis's recollection of what the Greenbergs said. The hearing judge found that, on the issue of whether Donnelly was authorized to execute the Assignment of Contract Rights, Bar Counsel's witnesses were more credible than Donnelly's witnesses. We discern no basis on which to disturb this finding.

**Finding That Complaint in Partition Case Was Unauthorized**

Donnelly excepts to the hearing judge's finding that he was not authorized to file the complaint in the Partition Case. Donnelly contends that the only basis for the hearing judge's finding was the testimony of Dr. Greenberg, who could not recall multiple matters. Donnelly argues that Bar Counsel did not dispute his statement in his June 19, 2013 letter to Kneeland—namely, that he filed the complaint in the Partition Case to protect Solomons One's interests. Donnelly asserts that the notes of the May 17, 2013 meeting of Solomons One's members show that there was no vote on whether to have the Partition Case dismissed.

We conclude that the hearing judge did not clearly err in finding that the complaint in the Partition Case was unauthorized. The hearing judge observed that Steffen testified

that, during a telephonic conversation, Dr. Greenberg authorized the complaint; however, the hearing judge noted that the Greenbergs testified that they did not authorize Donnelly to file the complaint. The hearing judge resolved this factual dispute in Bar Counsel's favor, unequivocally finding that Donnelly "did not receive authorization to file" the complaint. The record demonstrates that Erickson-File testified: "Donnelly filed for partition of [Solomons One's and McNelis's] property without my knowledge. . . . I never authorized [Donnelly] to file a lawsuit against [] McNelis." Without the consent of either of the Greenbergs or Erickson-File to file the complaint in the Partition Case, Donnelly could not have obtained the consent of members who owned a majority of Solomons One.

**Finding That Filings in Pier Case Were Unauthorized**

Donnelly contends that the hearing judge clearly erred in finding that he was not authorized to file documents in the Pier Case after the May 17, 2013 meeting of Solomons One's members. Donnelly argues that, at the meeting, members who owned a majority of Solomons One voted merely to terminate the MOU, in which Solomons One appointed Donnelly as its counsel as a general matter. Donnelly asserts that, at the meeting, there was no vote to terminate the Attorney-Client Agreement, which independently authorized him to represent Solomons One in the Pier Case. Alternatively, Donnelly maintains that, as he stated in his June 19, 2013 letter to Kneeland, his termination as Solomons One's counsel was pending the selection of new counsel. Donnelly contends that, without anyone else to represent Solomons One, he had a duty to appear on Solomons One's behalf at the June 17, 2013 hearing in the Pier Case.

Bar Counsel responds that the hearing judge correctly found that Donnelly

understood that, at the May 17, 2013 meeting of Solomons One's members, his representation of Solomons One was terminated for all purposes. Bar Counsel observes that, on the same day, Dr. Greenberg e-mailed Donnelly, asking that he confirm that he was terminated as Solomons One's counsel. Bar Counsel argues that the hearing judge was not required to accept Donnelly's contention that he remained Solomons One's counsel until it retained new counsel. Bar Counsel notes that the MOU provided that, upon written notice of termination, Donnelly would immediately stop representing Solomons One.

As a threshold matter, we observe that it is undisputed that, at the May 17, 2013 meeting, members who owned a majority of Solomons One voted to revoke the MOU. According to the notes of the meeting, Kneeland asked Solomons One's members: "Do you want to revoke the [MOU]?" Immediately before the vote, Dr. Greenberg said: "Motion made to revoke the [MOU]. Can everyone identify themselves and vote?" The Greenbergs, Erickson-File, and McNelis voted "yes," thus providing the necessary majority.

Neither the Attorney-Client Agreement nor the Pier Case was discussed at the meeting. Although the revocation of the MOU terminated Donnelly's representation of Solomons One generally, the Attorney-Client Agreement that concerned Donnelly's representation of Solomons One in the Pier Case was not addressed, even though, as Dr. Greenberg acknowledged, he had received Donnelly's August 23, 2012 letter describing the Attorney-Client Agreement and the Pier Case. The hearing judge recognized representing Solomons One in the Pier Case was "outside of the scope of" Donnelly's

general role as Solomons One's counsel pursuant to the MOU. Specifically, the hearing judge stated: "Since [the Pier Case] was outside of the scope of original representation, proper consent from [Solomons One's] members was required to proceed." Donnelly's ability to represent Solomons One in the Pier Case arose from August 23, 2012 letter and the Attorney-Client Agreement. As discussed above, Dr. Greenberg received the August 23, 2012 letter and did not object to Donnelly's representation of Solomons One in the Pier Case.

**Findings That Donnelly Engaged in Dishonesty and Misrepresentation[13]**

Donnelly excepts to the hearing judge's findings that he engaged in dishonesty and misrepresentation with regard to several matters. We address each finding separately, and sustain Donnelly's exceptions.

First, the hearing judge found that Donnelly was "dishonest and deceitful" in "attempting to bind [Solomons One] to" the Attorney-Client Agreement. The hearing judge also found that, in his August 27, 2013 letter to Bar Counsel, Donnelly falsely stated that the Greenbergs, Erickson-File, and McNelis had authorized the Attorney-Client Agreement. As discussed above, Donnelly provided notice of the Attorney-Client

---

[13]Whether an attorney violated an MLRPC that relates to dishonesty or misrepresentation, such as MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), is an issue of law. Whether an attorney engaged in dishonesty or misrepresentation, however, is an issue of fact. See Attorney Grievance Comm'n v. Jarosinski, 411 Md. 432, 452, 983 A.2d 477, 489 (2009) ("The factual determination of whether [the r]espondent engaged in conduct involving[] dishonesty, fraud, deceit[,] or misrepresentation was within the province of the hearing judge[.]" (Cleaned up)). Accordingly, before addressing conclusions of law, we review the hearing judge's findings that Donnelly engaged in dishonesty or misrepresentation.

Agreement in his August 23, 2012 letter to Dr. Greenberg, who received the benefit of Donnelly's legal services,[14] and acknowledged receiving the letter, but did not object to the Attorney-Client Agreement. Also, Donnelly testified that he sent a letter and the Attorney-Client Agreement to Guenther, Erickson-File's and McNelis's former counsel. Guenther testified that he may have received the letter and the Attorney-Client Agreement and included it in his file, which he forwarded to the law firm of Cumberland, Erickson-File's and McNelis's new counsel. Additionally, Donnelly sent bills and updates to the members of Solomons One concerning his representation of the company in the Pier Case. Given these facts, we are not convinced that there is a sufficient basis for the hearing judge's finding that Donnelly engaged in dishonesty or deceit in executing the Attorney-Client Agreement, or in stating to Bar Counsel that the Attorney-Client Agreement was valid.

Second, the hearing judge found that Donnelly "knowingly made false statements" to the circuit court by continuing to represent Solomons One in the Pier Case after the May

---

[14]A party accepts an offer of services through inaction, or silence, where the party knows the terms on which the services are offered, benefits from the services, and, despite having a reasonable opportunity to do so, does not reject the offer. See Porter, 284 Md. at 412, 396 A.2d at 1095-96; Cochran, 398 Md. at 23-24, 919 A.2d at 714. Any action that financially or legally benefitted Solomons One also indirectly benefitted Solomons One's owners, including Dr. Greenberg. Donnelly provided legal services to Solomons One by representing it in the Pier Case. In the Pier Case, the plaintiffs, including Solomons One, sought damages as a result of the denial of the joint application to build a pier adjacent to Solomons One's and McNelis's property and Donnelly's and Steffen's property. Ultimately, Solomons One prevailed in the Pier Case, and Solomons One sold its right to build a pier as part of the Bankruptcy Case. Donnelly benefitted all of Solomons One's members by representing Solomons One in the Pier Case, and by securing Solomons One's right to build a pier, thus increasing Solomons One's value. Solomons One's other members received the benefit of Donnelly's legal services, and raised no objection to Donnelly's filing of the complaint in the Pier Case.

17, 2013 meeting of Solomons One's members, at which the MOU was revoked. On May 17, 2013, Donnelly's general role as Solomons One's counsel ended. Donnelly contended that the Attorney-Client Agreement provided an independent source of authority for him to continue to act as Solomons One's counsel in the Pier Case. As discussed above, the record establishes that Dr. Greenberg received notice of the Attorney-Client Agreement in the form of Donnelly's August 23, 2012 letter, and did not object to the Attorney-Client Agreement. And, Donnelly communicated with the members of Solomons One about the Pier Case by sending bills and updates. We conclude that, under these circumstances, the evidence does not support the hearing judge's determination that Donnelly was dishonest in continuing to represent Solomons One in the Pier Case.

Third, the hearing judge found that, in his August 27, 2013 letter to Bar Counsel, Donnelly falsely stated that he had served as Solomons One's counsel until May 17, 2013. The record reflects, however, that Donnelly's statement was accurate. At the May 17, 2013 meeting of Solomons One's members, the MOU was terminated, and Donnelly's general role as Solomons One's counsel ceased. Pursuant to the Attorney-Client Agreement, however, Donnelly continued representing the plaintiffs, including Solomons One, in the Pier Case, which the hearing judge acknowledged was separate from the scope of his role as Solomons One's counsel. There is not a sufficient basis for the hearing judge's determination that Donnelly engaged in dishonesty by advising Bar Counsel that he served as Solomons One's counsel until May 17, 2013, when he was indeed terminated as Solomons One's counsel on that date.

Fourth, the hearing judge found that Donnelly engaged in dishonesty or

misrepresentation when he filed the complaint in the Partition Case without authorization. As discussed above, the hearing judge did not clearly err in finding that the complaint was unauthorized. That does not necessarily mean, however, that Donnelly's filing of the complaint was an act of dishonesty or misrepresentation. In other words, the circumstance that members who owned a majority of Solomons One did not authorize the complaint does not automatically lead to the conclusion that Donnelly acted with dishonesty or made a misrepresentation. Although it is accurate that the Greenbergs and Erickson-File testified that they did not authorize Donnelly to file the complaint, none of the witnesses testified to telling Donnelly, in advance of the filing of the complaint, that he was not authorized to do so, *i.e.*, that such a complaint should not be filed. We decline to conclude that taking an action on behalf of a client absent explicit authorization, without any additional evidence of dishonesty, fraud, deceit, or misrepresentation, is *per se* an act of dishonesty.

Fifth, the hearing judge found that Donnelly was "dishonest" in executing the Assignment of Contract Rights, as he used it to "divest" Solomons One of its right to build a pier, and to "enabl[e]" himself to pursue the Pier Case without acting as Solomons One's counsel. Contrary to the hearing judge's determination, however, there was no evidence that Donnelly's purpose in executing the Assignment of Contract Rights was to "divest" Solomons One of its right to build a pier. Although Donnelly executed the Assignment of Contract Rights, in which Solomons One purportedly assigned him, as trustee, its right to build a pier, there was no evidence that Donnelly executed the Assignment of Contract Rights for the purpose of personal gain. In other words, there was no evidence that Donnelly ever sold, or attempted to sell, Solomons One's right to build a pier, or

- 47 -

compromised that right in any way. Indeed, it is unclear whether Donnelly would have been able to sell or transfer Solomons One's right to build a pier without Solomons One's authorization when, under the Assignment of Contract Rights, he held the right to build a pier as a trustee, as opposed to holding it in his personal capacity. Donnelly and Solomons One had submitted a joint application to build a single pier adjacent to Donnelly's and Steffen's property and Solomons One's and McNelis's adjoining property. In light of the joint application to build one pier adjacent to both properties, it is unclear what value, if any, Solomons One's right to build a pier would have had independent of Donnelly's right to build a pier—a right that Donnelly possessed long before he executed the Assignment of Contract Rights. Furthermore, as Dr. Greenberg testified, the whole point of securing Solomons One's right to build a pier was to increase the value of the Property.[15] Under these circumstances, the evidence does not support the hearing judge's finding that Donnelly engaged in dishonesty when he executed the Assignment of Contract Rights.

### Exceptions to Failure to Find Aggravating Factors

Bar Counsel excepts to the hearing judge's failure to find that Donnelly's misconduct was aggravated by a dishonest or selfish motive. Bar Counsel contends that Donnelly pursued the Pier Case, and executed the Assignment of Contract Rights, for the

---

[15]Solomons One ultimately retained its right to build a pier. In an adversary case, the Bankruptcy Court declared that the Assignment of Contract Rights was void because it "was not properly approved in accordance with the Operating Agreement[.]" See Solomons One, LLC v. Vernon Charles Donnelly et al., Adversary No. 13-00580-TJC, 2014 WL 846084, at *11-12 (Bankr. D. Md. Mar. 4, 2014). According to Bar Counsel, as part of the Bankruptcy Case, Solomons One sold its right to build a pier. In other words, Donnelly did not retain the right of which he allegedly "divested" Solomons One.

selfish purpose of enhancing his property's value, notwithstanding the contrary wishes of Solomons One's other members. As discussed above, the evidence does not demonstrate that personal gain was the reason for executing the Assignment of Contract Rights. Indeed, the purpose of securing and protecting Solomons One's right to build a pier was to increase the Property's value—which, in turn, benefitted all of Solomons One's members, not just Donnelly. Although Donnelly might have also benefitted from Solomons One's right to build a pier due to his status as an owner of an adjoining property, this does not establish that Donnelly's motive was dishonest or selfish. We overrule this exception.

Bar Counsel also excepts to the hearing judge's failure to find that Donnelly's misconduct was aggravated by false statements and other deceptive practices during this attorney discipline proceeding. Bar Counsel relies on the hearing judge's finding that Donnelly made false statements in his August 27, 2013 letter to Bar Counsel. As discussed above, we are not persuaded that Donnelly made false statements in his August 27, 2013 letter to Bar Counsel. We overrule this exception as well.

Bar Counsel excepts to the hearing judge's failure to find that Donnelly's misconduct was aggravated by substantial experience in the practice of law. The hearing judge found that this Court admitted Donnelly to the Bar of Maryland in 1982—*i.e.*, approximately thirty years before 2012, when Donnelly's alleged misconduct began. Given that Donnelly had been a member of the Bar of Maryland for approximately thirty years at the time of his misconduct, we sustain this exception. Cf. Chanthunya, 446 Md. at 607, 133 A.3d at 1052 ("We note [the] aggravating factor[ of] substantial experience in the practice of law, as [the lawyer] had been a member of the Bar of Maryland for

approximately ten years at the time of his misconduct[.]").

## Exception to Finding of Mitigating Factor

Bar Counsel excepts to the hearing judge's finding that Donnelly's misconduct was mitigated by the circumstance that the Assignment of Contract Rights did not cause Solomons One substantial financial harm. Bar Counsel acknowledges that, ultimately, Solomons One sold its right to build a pier as part of the Bankruptcy Case. Bar Counsel contends, however, that, as a result of the Assignment of Contract Rights, Solomons One incurred attorney's fees in an adversary case ("the Adversary Case"),[16] in which the Bankruptcy Court determined that the Assignment of Contract Rights was void, and that Donnelly violated the automatic stay by filing the substitution of the trustee and other documents in the circuit court. Bar Counsel acknowledges, however, that, in the Adversary Case, the Bankruptcy Court awarded Solomons One approximately $40,000 in attorney's fees. We conclude that the hearing judge did not clearly err, and we overrule this exception.

---

[16]The record demonstrates that, on October 4, 2013, Solomons One's new counsel filed with the Bankruptcy Court a complaint against Donnelly and Steffen, initiating the Adversary Case. In the complaint in the Adversary Case, Solomons One asserted multiple causes of action against Donnelly and Steffen. Solomons One sought a declaratory judgment that the Assignment of Contract Rights had been unauthorized. Ultimately, in the Adversary Case, the Bankruptcy Court granted partial summary judgment in Solomons One's favor, and declared that the Assignment of Contract Rights was void. See In re Solomons One, LLC, Bankruptcy No. 13-24475-TJC, Solomons One, LLC v. Vernon Charles Donnelly et al., Adversary No. 13-00580-TJC, 2014 WL 846084, at *12 (Bankr. D. Md. Mar. 4, 2014).

## (C) Conclusions of Law[17]

**MLRPC 1.2(a) (Allocation of Authority Between Client and Lawyer)**

In its entirety, MLRPC 1.2 states:

(a) Subject to sections (c) and (d) of this Rule, a lawyer shall abide by a client's decisions concerning the objectives of the representation and, when appropriate, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to

---

[17]Bar Counsel excepts to the following conclusions of law by the hearing judge: that Donnelly did not violate MLRPC 1.2 in filing the complaint in the Pier Case; that Donnelly did not violate MLRPC 1.7 in representing Solomons One despite the existence of a conflict of interest; and that Donnelly did not violate MLRPC 4.2 in directly communicating with Solomons One's other members instead of communicating only with their counsel. For the reasons below, we overrule all of Bar Counsel's exceptions.

Donnelly excepts to all of the hearing judge's conclusions that he violated the MLRPC. For the reasons below, we sustain Donnelly's exceptions as to the hearing judge's conclusions that he violated the following MLRPC:

1. 1.2 in executing the Attorney-Client Agreement and in continuing to represent Solomons One in the Pier Case after the May 17, 2013 meeting of Solomons One's members;

2. 1.4 with regard to the Attorney-Client Agreement and in allegedly failing to send the Attorney-Client Agreement to Solomons One's other members;

3. 1.5(b) in executing the Attorney-Client Agreement;

4. 1.8(i) in executing the Assignment of Contract Rights while the Pier Case was pending;

5. 1.15(a) in executing the Assignment of Contract Rights;

6. 1.15(d) by continuing to assert that he held the right to build a pier after he learned that Solomons One's new counsel challenged the validity of the Assignment of Contract Rights;

7. 1.16(a)(3) in continuing to represent Solomons One in the Pier Case after the May 17, 2013 meeting of Solomons One's members;

8. 3.1 in continuing to assert that Solomons One was the party in interest in the Pier Case after he executed the Assignment of Contract Rights, and in filing the complaint in the Partition Case without authorization; and

9. 3.3(a)(1), 8.1, and 8.4(c).

We overrule the remainder of Donnelly's exceptions.

- 51 -

a plea to be entered, whether to waive jury trial and whether the client will testify.

(b) A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social[,] or moral views or activities.

(c) A lawyer may limit the scope of the representation in accordance with applicable Maryland Rules if (1) the limitation is reasonable under the circumstances, (2) the client gives informed consent, and (3) the scope and limitations of any representation, beyond an initial consultation or brief advice provided without a fee, are clearly set forth in a writing, including any duty on the part of the lawyer under Rule 1-324 to forward notices to the client.

(d) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.

To begin, the hearing judge concluded that Donnelly violated MLRPC 1.2 in executing the Attorney-Client Agreement, filing the complaint in the Partition Case, executing the Assignment of Contract Rights, and continuing to represent Solomons One in the Pier Case after the May 17, 2013 meeting of Solomons One's members. In contrast, the hearing judge concluded that Donnelly did not violate MLRPC 1.2 in filing the complaint in the Pier Case, or filing the motion to vacate in the Confession of Judgment Case.

In concluding that Donnelly violated MLRPC 1.2 in certain instances, and that he did not violate MLRPC 1.2 in other instances, the hearing judge did not identify a specific section of MLRPC 1.2 that Donnelly allegedly did or did not violate. In addressing whether Donnelly violated MLRPC 1.2, the hearing judge discussed whether members who owned

a majority of Solomons One authorized Donnelly's actions, and mentioned MLRPC 1.2(a). Given that the hearing judge addressed whether Donnelly's actions were authorized and referenced MLRPC 1.2(a), it is apparent that the hearing judge's conclusions pertained to MLRPC 1.2(a).

Clear and convincing evidence supports the hearing judge's conclusions that Donnelly violated MLRPC 1.2(a) in filing the complaint in the Partition Case and executing the Assignment of Contract Rights. The hearing judge correctly concluded that Donnelly did not violate MLRPC 1.2 in filing the complaint in the Pier Case and filing the motion to vacate in the Confession of Judgment Case. The hearing judge's conclusions that Donnelly violated MLRPC 1.2 in executing the Attorney-Client Agreement and continuing to represent Solomons One in the Pier Case after the May 17, 2013 meeting of Solomons One's members are not supported by clear and convincing evidence.

There is clear and convincing evidence to support the hearing judge's conclusion that Donnelly violated MLRPC 1.2(a) by filing the complaint in the Partition Case without the authorization of members who owned a majority of Solomons One, as the Greenbergs and Erickson-File testified unequivocally at the disciplinary hearing that they did not authorize the Complaint. The Greenbergs owned 48 1/3% of Solomons One, and Erickson-File owned 2 1/3% of Solomons One. Absent the approval of either the Greenbergs or Erickson-File, the filing of the complaint in the Partition Case could not have been approved by members who owned a majority of Solomons One.

The hearing judge determined that Donnelly violated MLRPC 1.2(a) in executing the Assignment of Contract Rights without the approval of members who owned a majority

- 53 -

of Solomons One. The Greenbergs, McNelis, and Erickson-File testified that they did not authorize Donnelly to execute the Assignment of Contract Rights. Indeed, the Greenbergs, Erickson-File, and McNelis testified that they were unaware of the Assignment of Contract Rights until May or June 2013, when McNelis located it while searching land records. Thus, the hearing judge's determination that the Assignment of Contract Rights was not authorized by members who owned a majority of Solomons One is supported by clear and convincing evidence.

The hearing judge's conclusion that Donnelly violated MLRPC 1.2 in executing the Attorney-Client Agreement, however, is not supported by clear and convincing evidence. Donnelly contends that he provided Dr. Greenberg with notice of the Attorney-Client Agreement in the form of his August 23, 2012 letter describing the Attorney-Client Agreement, and to which the Attorney-Client Agreement was purportedly attached. Dr. Greenberg acknowledged receiving the August 23, 2012 letter, but not the Attorney-Client Agreement. Upon receiving the August 23, 2012 letter, Dr. Greenberg did not raise an objection to the Attorney-Client Agreement. In addition, Dr. Greenberg received the benefit of Donnelly's legal services—*i.e.*, Donnelly provided legal services to Solomons One, and, thereby, to Dr. Greenberg, in the Pier Case.

Similarly, the hearing judge's conclusion that Donnelly violated MLRPC 1.2 in continuing to represent Solomons One in the Pier Case after the May 17, 2013 meeting of Solomons One's members is not supported by clear and convincing evidence. At the meeting, members who owned a majority of Solomons One voted to terminate the MOU; there was no mention of the Attorney-Client Agreement, which purported to independently

- 54 -

to authorize Donnelly to represent Solomons One in the Pier Case. Thus, we conclude that the hearing judge's determination that Donnelly violated MLRPC 1.2 in continuing to represent Solomons One after the May 17, 2013 meeting is not supported by clear and convincing evidence.

The hearing judge was correct in concluding that clear and convincing evidence did not establish that Donnelly violated MLRPC 1.2 in filing the complaint in the Pier Case. Members who owned a majority of Solomons One—namely, Donnelly, Steffen, and Dr. Greenberg—authorized Donnelly to pursue litigation to secure Solomons One's right to build a pier. The record demonstrates that, on August 7, 2012, Dr. Greenberg e-mailed Donnelly, indicating that he had been in touch with McNelis and Erickson-File "and rethinking the pier rights question." Dr. Greenberg stated that "it looks like we will be going forward with this[,]" and asked Donnelly what needed to be done. Dr. Greenberg also testified that he had decided to move forward with litigation to obtain Solomons One's right to construct a pier.

Finally, the hearing judge correctly concluded that there was not clear and convincing evidence that Donnelly violated MLRPC 1.2 in filing the Motion to Vacate in the Confession of Judgment Case. Dr. Greenberg testified that he could not remember whether he authorized Donnelly to file the motion to vacate. If Dr. Greenberg had, indeed, authorized the filing of the motion, members who owned a majority of Solomons One would have approved the filing of the motion to vacate. In the absence of conclusive evidence that Dr. Greenberg did not authorize the filing of the motion to vacate, Bar Counsel failed to prove that the motion was not authorized.

## MLRPC 1.4(a)(2) (Communication Generally)

In its entirety, MLRPC 1.4 states:

(a) A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(f), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the lawyer's conduct when the attorney knows that the client expects assistance not permitted by the Maryland Lawyers' Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge concluded that Donnelly violated MLRPC 1.4 with regard to the Attorney-Client Agreement, the Assignment of Contract Rights, and the complaint in the Partition Case, by failing to keep his client, Solomons One, reasonably informed of the matters. The hearing judge concluded that Donnelly did not violate MLRPC 1.4 with regard to communicating with Solomons One's other members about the Pier Case.

The hearing judge did not identify the specific provisions of MLRPC 1.4 that he found Donnelly did or did not violate. In his analysis of MLRPC 1.4, the hearing judge discussed whether Donnelly kept Solomons One "reasonably informed" of the Pier Case and other matters. We glean that the hearing judge's analysis involved MLRPC 1.4(a)(2), which requires a lawyer to "keep the client reasonably informed about the status of the matter[.]"

- 56 -

The hearing judge's conclusions that Donnelly violated MLRPC 1.4 with regard to the Assignment of Contract Rights and the complaint in the Partition Case are supported by clear and convincing evidence. As to the alleged failure to disclose the Attorney-Client Agreement, there is not clear and convincing evidence of violations of MLRPC 1.4, and the hearing judge correctly determined that Donnelly did not violate MLRPC 1.4 as to communications regarding the Pier Case.

At the disciplinary hearing, the Greenbergs, McNelis, and Erickson-File testified that they did not receive a copy of the Assignment of Contract Rights. Donnelly testified that he did not provide the Assignment of Contract Rights to the Greenbergs. And, although Donnelly corresponded with Erickson-File and McNelis between December 2012 and July 2013, the hearing judge found that, in his correspondence, Donnelly did not mention the Assignment of Contract Rights. Additionally, the hearing judge found that, in an e-mail dated December 28 or 29, 2012, Donnelly provided McNelis with information that was inconsistent with Donnelly having assigned Solomons One's right to build a pier to himself as a trustee. The Greenbergs, Erickson-File, and McNelis testified that they were unaware of the Assignment, which was executed on December 4, 2012, until May or June 2013. The hearing judge's determination with respect to the Assignment of Contract Rights is supported by clear and convincing evidence.

Clear and convincing evidence also supports the hearing judge's conclusion that Donnelly violated MLRPC 1.4 with regard to failing to disclose the complaint in the Partition Case. The hearing judge found that Donnelly failed to "appropriately inform" Solomons One's other members that he had filed the complaint. In his exceptions,

Donnelly contends that Solomons One's other members were aware of the Partition Case. Donnelly does not allege, however, that he sent the complaint to Solomons One's other members. The hearing judge noted that the Greenbergs denied seeing a copy of the complaint. Although the hearing judge did not refer to Erickson-File's or McNelis's receipt of the complaint in his opinion, the record reflects that Erickson-File testified that Donnelly filed the complaint without her knowledge. McNelis, who was the defendant in the Partition Case, testified that her lawyers were served with a copy of the complaint. Regardless of whether Solomons One's other members eventually somehow became aware of the Partition Case, Donnelly was required under MLRPC 1.4(a)(2) to keep his client, Solomons One, reasonably informed by providing a copy of the complaint.

The hearing judge's conclusion that Donnelly violated MLRPC 1.4 in allegedly failing to send the Attorney-Client Agreement to Solomons One's other members is not supported by clear and convincing evidence. The record reflects that Donnelly sent a letter dated August 23, 2012 to Dr. Greenberg stating that he had enclosed the Attorney-Client Agreement, and stating that he had "waived the request for payment of immediate escrow amounts for the [a]ttorney['s] fee and [c]osts[,]" and that the contingency fee arrangement remained in place. In his August 23, 2012 letter, Donnelly stated: "In the event [that] there is no recovery, then there is no payment due from [Solomons One] or the members. I am shouldering myself the hourly attorney['s] fee and costs from my own pocket." In the letter, Donnelly also stated that he had enclosed a copy of the complaint in the Pier Case. In the letter, Donnelly advised that the plaintiffs sought declaratory judgment as to whether there was a contract between Solomons One and the State and Calvert County with respect

to the right to build a pier. In the letter, Donnelly explained that the Pier Case would possibly enhance the value of Solomons One's property. As discussed above, at the disciplinary hearing, Dr. Greenberg acknowledged receiving the August 23, 2012 letter. Donnelly also testified that he sent a letter and attachments to Guenther, Erickson-File's and McNelis's counsel. Guenther, however, did not acknowledge receiving the letter, but testified that, if he had, he would have included it in the case file that he passed on Erickson-File's and McNelis's new counsel. In his exceptions, Donnelly alleges that Guenther's case file was not disclosed to him during discovery.

Given Dr. Greenberg's acknowledgement of his receipt of the August 23, 2012 letter and the circumstances set forth above regarding Donnelly's contention that he sent the letter and the attachment to Guenther, the hearing judge's conclusion that Donnelly violated MLRPC 1.4 with regard to the Attorney-Client Agreement is not supported by clear and convincing evidence.

Finally, the record demonstrates that hearing judge correctly concluded that Donnelly "kept [Solomons One] reasonably informed about the status of the Pier [Case] by sending correspondence and pleadings to the individual members."

### MLRPC 1.5(b) and (c) (Communication of Fees)

MLRPC 1.5(a) through (c) states, in pertinent part:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the attorney;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by section (d) or other law. A contingent fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be responsible whether or not the client is the prevailing party. . . .

The hearing judge concluded that Donnelly violated MLRPC 1.5 in executing the Attorney-Client Agreement, which "was not signed by[,] or agreed to by[,] the client, [Solomons One], pursuant to the Operating Agreement." The hearing judge also found

that, in executing the Assignment of Contract Rights on December 4, 2012, and including language providing for $8,000 in attorney's fees and costs to be paid to him in addition to a contingency fee on any amount recovered, Donnelly violated MLRPC 1.5. The hearing judge stated that Donnelly "changed the basis or rate of the fee or expenses without communicating this information to [Solomons One] at a meeting of the members, in violation of MLRPC 1.5(d)." In the Petition for Disciplinary or Remedial Action, Bar Counsel charged Donnelly with violating MLRPC 1.5(a) through (c), but not with violating MLRPC 1.5(d), which applies only to criminal and domestic relations cases. Thus, the "(d)" in the above statement by the hearing judge may be a typographical error.

The hearing judge's analysis of MLRPC 1.5 pertained to whether Donnelly properly communicated regarding fee arrangements with his client, Solomons One. The hearing judge also concluded that Donnelly "changed the terms of the [Attorney-Client] Agreement when he executed the Assignment [of Contract Rights,] which included language calling for $8,000 in attorney fees and costs in addition to payment of a 33 1/3% and/or 40% contingency fee on any amount recovered." MLRPC 1.5(b) states in pertinent part: "Any changes in the basis or rate of the fee or expenses shall [] be communicated to the client." MLRPC 1.5(c) states in pertinent part: "A contingent fee agreement shall be in a writing signed by the client[.]" The hearing judge's conclusions implicate MLRPC 1.5(b) and (c).

We have previously concluded that the Attorney-Client Agreement, although not expressly authorized by Dr. Greenberg or other members of Solomons One, was accepted by Dr. Greenberg based on his receipt of Donnelly's letter of August 23, 2012, and acceptance of the benefit of Donnelly's legal services. MLRPC 1.5(b) requires a lawyer

to communicate the scope of representation or basis or rate of fee and expenses for which the client will be responsible. Donnelly's August 23, 2012 letter did this. In his August 23, 2012 letter, Donnelly indicated that his representation pertained to the Pier Case; that a complaint for declaratory judgment that had been filed in connection with enforcing those rights; that, in the event of no recovery, there would be no payment due from Solomons One or its members; and that he would be "shouldering" the hourly attorney's fee and costs from his own pocket.

MLRPC 1.5(c) states: "A contingency fee agreement shall be in a writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer[.]" At the disciplinary hearing, Donnelly testified that he attached a copy of the Attorney-Client Agreement to his August 23, 2012 letter. The Attorney-Client Agreement provided that Donnelly would receive a contingency fee of 33 1/3% of any settlement or recovery while the case was before a circuit court, and would receive a contingency fee of 40% of any settlement or recovery while the case was before an appellate court. Dr. Greenberg denied receiving the Attorney-Client Agreement as an attachment. Guenther testified that he could not recall whether he received the Attorney-Client Agreement, but that, if he did, he would have placed the Attorney-Client Agreement in his file. This testimony does not establish by clear and convincing evidence that Donnelly violated MLRPC 1.5(b) with respect to the Attorney-Client Agreement. However, it is undisputed that, although accepted by members who owned a majority of Solomons One, the Attorney-Client Agreement, which called for a contingency fee, was not signed by members who owned a majority of Solomons One;

- 62 -

only Donnelly and Steffens signed the Attorney-Client Agreement. As such, Donnelly violated MLRPC 1.5(c), which provides not only that a contingent fee agreement be in writing, but also that such an agreement be signed by the client. Absent signatures from members owning a majority of Solomons One, we conclude that the hearing judge's determination that Attorney-Client Agreement was not signed by the client, as contemplated by MLRPC 1.5(c), is accurate.

As to the Assignment of Contract Rights and its change of the attorney's fees by requiring a payment of $8,000 for fees and costs in addition to the contingency fee, there is clear and convincing evidence that this conduct was a violation of MLRPC 1.5(b). Donnelly executed the Assignment of Contract Rights without the agreement of Solomons One's other members. Indeed, Solomons One's other members were unaware of the Assignment of Contract Rights before McNelis found it among land records. Plainly, any change to the fee agreement with respect to the Pier Case that was included in the Assignment of Contract Rights was not approved by members who owned a majority of Solomons One. The hearing judge observed that, if the Greenbergs actually approved the terms of the Attorney-Client Agreement, then Donnelly changed the terms of the Attorney-client Agreement when he executed the Assignment of Contract Rights, which included a provision for $8,000 in attorney's fees and costs in addition to a payment of 33 1/13% and/or 40% of any recovery.

### MLRPC 1.7 (Conflict of Interest: General Rule)

MLRPC 1.7 states, in pertinent part:

(a) Except as provided in section (b), a lawyer shall not represent a client if

the representation involves a conflict of interest.  A conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

(b) Notwithstanding the existence of a conflict of interest under paragraph (a) of this Rule, a lawyer may represent a client if:

(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;

(2) the representation is not prohibited by law;

(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and

(4) each affected client gives informed consent, confirmed in writing.

The hearing judge concluded that Donnelly did not violate MLRPC 1.7[18] in representing Solomons One.  We agree.  In finding no violation of MLRPC 1.7, the hearing judge summarized the circumstances surrounding the formation of Solomons One, and documents such as the Operating Agreement and MOU.  The hearing judge observed that, in the Operating Agreement, the parties acknowledged that the Operating Agreement had been drafted by Donnelly, who was a member of Solomons One; that each member had

_____

[18]The hearing judge concluded that Donnelly did not violate MLRPC 1.7, without referring to a specific section of MLRPC 1.7.  MLRPC 1.7(a) sets forth a general requirement that a lawyer refrain from "represent[ing] a client if the representation involves a conflict of interest."  MLRPC 1.7(b) describes circumstances under which a lawyer may represent a client "[n]otwithstanding the existence of a conflict of interest"—*i.e.*, MLRPC 1.7(b) sets forth an exception to the general rule under MLRPC 1.7(a).

been advised to seek independent counsel as to their rights and obligations under the Operating Agreement; and each member acknowledged that, in entering into the Operating Agreement, he or she had not relied on Donnelly's legal advice. In the MOU, the members indicated that they understood the potential for a conflict of interest, and each member expressly waived such conflict of interest in writing. The MOU indicated that each member had either retained counsel or voluntarily waived such right, and the MOU stated that Donnelly represented Solomons One and not any of the individual members.

In its exceptions, Bar Counsel contends:

> To the extent the members waived any potential conflict at the time [Solomons One] was organized, the waiver would not have acted as a waiver of all conflicts of interest forever and all time. As events and circumstances changed additional information was required to be given and the informed consent of the client obtained as to the current circumstances.

Bar Counsel argues that Donnelly's execution of the Assignment of Contract Rights, the Attorney-Client Agreement, and representation of multiple clients in the Pier Case violated MLRPC 1.7.

In contrast to its exceptions, in the Petition for Disciplinary or Remedial Action, Bar Counsel alleged only that: "From August 2005 until May 17, 2013, [Donnelly] represented Solomons One as well as himself as an individual in the [P]ier [Case]. The MOU included a waiver of any possible conflict of interest presented by [Donnelly]'s joint representation of Solomons One and himself." In the Petition for Disciplinary or Remedial Action, Bar Counsel also alleged: "In his arguments in the bankruptcy proceedings, [Donnelly] argued against his former client's interests." There is no mention in the Petition for Disciplinary or Remedial Action with respect to any alleged conflict of interest concerning Donnelly's

conduct as to the Assignment of Contract Rights, the Attorney-Client Agreement, and his representation of multiple parties in the Pier Case. Given the waiver of the conflict of interest in the MOU, the hearing judge correctly determined that there was no violation of MLRPC 1.7.

### MLRPC 1.8(i) (Conflict of Interest: Current Clients: Specific Rules: Proprietary Interest)

MLRPC 1.8(i) states:

A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client, except that the lawyer may:

   (1) acquire a lien authorized by law to secure the lawyer's fee or expenses; and

   (2) subject to Rule 1.5, contract with a client for a reasonable contingent fee in a civil case.

MLRPC 1.8(i) "is designed to avoid giving the lawyer too great an interest in the representation." MLRPC 1.8 cmt. 16.

The hearing judge found that Donnelly violated MLRPC 1.8(i) by acquiring a property interest in the "cause of action or subject matter" of the Pier Case as a result of the Assignment of Contract Rights. According to the hearing judge, neither of the exceptions set forth in MLRPC 1.8(i)(1) or (2) applied to the circumstances presented by the Assignment of Contract Rights. Simply put, we disagree that Donnelly violated MLRPC 1.8(i).

The Assignment of Contract Rights provided that Solomons One assigned its right to build a pier to Donnelly, who agreed to hold that right "in Trust, as Trustee, for"

Solomons One's members. Given that the Assignment of Contract Rights authorized him to hold the right to build a pier merely as a trustee for Solomons One's members, Donnelly did not acquire a proprietary interest in the subject matter of the Pier Case. A "trustee" is "[s]omeone who stands in a fiduciary or confidential relation to another; esp[ecially], one who, having legal title to property, holds it in trust for the benefit of another[,] and owes a fiduciary duty to that beneficiary." Trustee, Black's Law Dictionary (10th ed. 2014). The hearing judge's conclusion with respect to Donnelly's violation of MLRPC 1.8(i) is not supported by clear and convincing evidence.

### MLRPC 1.13(a) (Organization as Client)

MLRPC 1.13 states:

(a) A lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents.

(b) If a lawyer for an organization knows that an officer, employee or other person associated with the organization is engaged in action, intends to act or refuses to act in a matter related to the representation that is a violation of a legal obligation to the organization, or a violation of law that reasonably might be imputed to the organization, and is likely to result in substantial injury to the organization, the lawyer shall proceed as is reasonably necessary in the best interest of the organization. Unless the lawyer reasonably believes that it is not necessary in the best interest of the organization to do so, the lawyer shall refer the matter to higher authority in the organization, including, if warranted by the circumstances, to the highest authority that can act on behalf of the organization as determined by applicable law.

(c) When the organization's highest authority insists upon action, or refuses to take action, that is clearly a violation of a legal obligation to the organization, or a violation of law which reasonably might be imputed to the organization, and is reasonably certain to result in substantial injury to the organization, the lawyer may take further remedial action that the lawyer reasonably believes to be in the best interest of the organization. Such action may include revealing information otherwise protected by Rule 1.6 only if the lawyer reasonably believes that:

- 67 -

(1) the highest authority in the organization has acted to further the personal or financial interests of members of the authority which are in conflict with the interests of the organization; and

(2) revealing the information is necessary in the best interest of the organization.

(d) In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

(e) A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7. If the organization's consent to the dual representation is required by Rule 1.7, the consent shall be given by an appropriate official of the organization other than the individual who is to be represented, or by the shareholders.

The hearing judge concluded that Donnelly violated MLRPC 1.13(a) because there was no evidence that he had been directed, "consistent with the terms of the Operating Agreement, as the attorney for [Solomons One], to execute and record the Assignment of Contract Rights or file the Partition [Case] against McNelis." This Court has not had an opportunity to address or interpret the applicability of MLRPC 1.13(a). As such, this Court has never found a violation of MLRPC 1.13(a). By its plain language, MLRPC 1.13(a) does not prohibit any conduct by a lawyer in its representation of an organization, or describe actions that would constitute misconduct by a lawyer. MLRPC 1.13(a) merely states that a lawyer represents an organization through its duly authorized constituents. Unlike MLRPC 1.13's other sections, MLRPC 1.13(a) does not include the terms "shall," "may," or otherwise require or prohibit conduct. By way of analogy, "MLRPC 5.2(a)

- 68 -

establishes that it is not a defense to a violation of another MLRPC that a lawyer was following orders. Thus, technically speaking, a lawyer cannot violate MLRPC 5.2(a) itself." Attorney Grievance Comm'n v. McDowell, 439 Md. 26, 32 n.4, 93 A.3d 711, 715 n.4 (2014).

In the Petition for Disciplinary Action, Bar Counsel charged Donnelly with violating MLRPC 1.13(a) through (e). Bar Counsel has not offered any evidence, however, that Donnelly violated MLRPC 1.13(b), (c), (d), or (e). MLRPC 1.13(b) and (c) describe a lawyer's duty to an organization as a client where a lawyer knows that a member of the organization acts, or refuses to act, in a manner that is in violation of a legal obligation to the organization. MLRPC 1.13(d) and (e) concern a lawyer's obligation to explain the identity of a client when a lawyer reasonably should know that the organization's interests are adverse to those of the constituents with whom the lawyer is dealing, and the circumstances under which a lawyer representing an organization may also represent any of its directors, officers, employees, or the like. In other words, none of the subsections of MLRPC 1.13 directly address the circumstance of a lawyer allegedly engaging in misconduct by acting without the consent or authorization of an organizational client. Based on the plain language of MLRPC 1.13(a), it is not clear that MLRPC 1.13(a) is an MLRPC that may be violated itself, and there is not clear and convincing evidence to support the conclusion that the subsection applies to the conduct alleged by Bar Counsel in this case.

**MLRPC 1.15(a), (d) (Safekeeping Property)**

MLRPC 1.15(a) and (d) state, in pertinent part:

(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. . . . [P]roperty [other than funds] shall be identified specifically as such and appropriately safeguarded, and records of its receipt and distribution shall be created and maintained. . . .

(d) . . . Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall deliver promptly to the client or third person any funds or other property that the client or third person is entitled to receive[.] . . .

The hearing judge concluded that Donnelly had violated MLRPC 1.15(d) because, by executing the Assignment of Contract Rights, Donnelly caused an asset of Solomons One "to be transferred to the members and himself as their trustee." The hearing judge reasoned that, to the extent that Donnelly solely exercised control of the Property based on the Assignment of Contract Rights, Solomons One's property became his, and "was no longer kept separate." The hearing judge concluded that Solomons One's property had been commingled with Donnelly's personal property. The hearing judge reasoned that, once Donnelly knew there was a dispute about the ownership of the pier rights, he failed to keep the pier rights separate from his own property, and asserted that he held the pier rights by virtue of the Assignment of Contract Rights. We disagree.

MLRPC 1.15(d) provides, in pertinent part, that, "[e]xcept as stated in this Rule or otherwise permitted by law or agreement with the client, a lawyer shall deliver promptly to a client or third person any funds or other property that the client or third person is entitled to receive[,]" and, upon request, shall give a full accounting regarding such property. We fail to discern that the hearing judge's findings demonstrate a violation

- 70 -

MLRPC 1.15(d).[19]

Solomons One's new counsel filed a Motion to Strike Donnelly's appearance in the Pier Case in the circuit court. In the Motion to Strike, Solomons One's counsel contended that, by executing the Assignment of Contract Rights, Donnelly had assigned the pier rights to himself, and had conveyed the rights to himself for his own personal benefit. Donnelly filed an opposition arguing that he held the pier right interest in trust for himself and the other members, and that the Motion to Strike was moot. In finding a violation MLRPC 1.15(d), the hearing judge appears to have adopted the position taken by Solomons One's counsel in the Motion to Strike. The docket entries from the Pier Case reflect that the circuit court held the Motion to Strike under advisement, and did not rule on it.

When the Motion to Strike was filed, the matter of whether the Assignment of Contract Rights was valid was subject to dispute. Eventually, in the Adversary Case, the Bankruptcy Court declared that the Assignment of Contract Rights was void. See Solomons One, LLC v. Vernon Charles Donnelly et al., Adversary No. 13-00580-TJC, 2014 WL 846084, at *12 (Bankr. D. Md. Mar. 4, 2014). Specifically, the Bankruptcy Court held that, "because no written consent was obtained by a majority of the members of [Solomons One], the Assignment [of Contract Rights] was not properly authorized under § 6.1(B) of the Operating Agreement[.] . . . This case highlights the need for the written consent requirement in § 6.1(B) of the Operating Agreement." Id. at *9. The Bankruptcy

_____

[19]MLRPC 1.15(a) states that a lawyer shall hold property of a client separate from the lawyer's own personal property. The hearing judge did not find a violation of MLRPC 1.15(a).

Court concluded, as we have, that the Assignment of Contract Rights was not authorized by members who owned a majority of Solomons One, see id.; but the Bankruptcy Court did not conclude that Donnelly had conveyed rights to himself for his own personal benefit. Apart from the bald allegations in the Motion to Strike, there is no evidence that Donnelly assigned the pier rights to himself for personal benefit. Even if the hearing judge had found a violation of MLRPC 1.15(a), we would not find this determination to be supported by clear and convincing evidence.

### MLRPC 1.16(a)(3), (d) (Terminating Representation)

"[A] lawyer . . . shall withdraw from the representation of a client if . . . the lawyer is discharged." MLRPC 1.16(a)(3). MLRPC 1.16(d) states in its entirety:

> Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of another lawyer, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

The hearing judge concluded that Donnelly violated MLRPC 1.16(a)(3) in continuing to represent Solomons One in the Pier Case after the May 17, 2013 meeting of Solomons One's members, and failing to withdraw from representation of Solomons One in the Partition Case. The hearing judge also found that Donnelly violated MLRPC 1.16(d) by failing to promptly surrender Solomons One's papers to its new counsel. We agree that Donnelly violated MLRPC 1.16(a)(3) and 1.16(d).

The hearing judge's determination with respect to Donnelly's violations of MLRPC 1.16(a)(3) as to the Partition Case is supported by clear and convincing evidence. It is

undisputed that, at the May 17, 2013 meeting, members who owned a majority of Solomons One voted to remove Donnelly as Solomons One's counsel generally. As a result of the May 17, 2013 meeting, Donnelly was obligated to stop representing Solomons One and withdraw his appearance in the Partition Case. The hearing judge expressly found that Donnelly did not withdraw his appearance in the Partition Case. This is sufficient to substantiate a violation of MLRPC 1.16(a)(3) by clear and convincing evidence. Clear and convincing evidence does not support the hearing judge's conclusion that Donnelly violated MLRPC 1.16(a)(3) with respect to continuing to represent Solomons One in the Pier Case after the May 17, 2013 meeting of Solomons One's members. The Attorney-Client Agreement provided a separate basis for Donnelly to continue the litigation in the Pier Case even after Donnelly was terminated as Solomons One's counsel generally when the MOU was revoked at the May 17, 2013 meeting.[20]

The hearing judge's conclusion that Donnelly violated MLRPC 1.16(d) in failing to promptly surrender Solomons One's papers to its new counsel is supported by clear and convincing evidence, as Donnelly had not done so as of October 28, 2013—more than five months after the MOU was revoked.

---

[20]Although the hearing judge concluded that Donnelly made additional filings on behalf of Solomons One in the Partition Case and represented Solomons One at a hearing on June 17, 2013, there is nothing in the hearing judge's opinion to substantiate the conclusion that Donnelly filed anything in the Partition Case other than the Complaint. The June 17, 2013 hearing pertained to the Pier Case, not the Partition Case. These facts, although relied upon by the hearing judge, do not substantiate a violation of MLRPC 1.16(a)(3).

## MLRPC 3.1 (Meritorious Claims and Contentions)

"A lawyer shall not bring . . . a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes, for example, a good faith argument for an extension, modification[,] or reversal of existing law." MLRPC 3.1. A case is frivolous where "the lawyer is unable either to make a good faith argument on the merits of the [case,] or to support the [case] by a good faith argument for an extension, modification[,] or reversal of existing law." MLRPC 3.1 cmt. 2.

> With respect to the violation of MLRPC 3.1, the hearing judge concluded:

> There was clear and convincing evidence that [Donnelly] continued to assert that [Solomons One], had contract pier rights and was the proper party to pursue those rights after the rights were [a]ssigned on December 4, 2012, in violation o[f] MLRPC 3.1. The assertion of rights on behalf of [Solomons One], after the Assignment [of Contract Rights] was executed was frivolous and baseless.

We have concluded that Donnelly violated MLRPC 1.2(a) and 1.4(a)(2) with respect to executing the Assignment of Contract Rights without the authority of the majority of its members. We do not discern, however, grounds to support a violation of MLRPC 3.1, given that the Assignment of Contract Rights involved an assignment to Donnelly as trustee.

The hearing judge's conclusion that Donnelly violated MLRPC 3.1 by filing the complaint in the Partition Case without authorization is not supported by clear and convincing evidence. Although Donnelly violated MLRPC 1.2(a) in doing so, it does not necessarily follow that Donnelly also violated MLRPC 3.1. There is no evidence that, in the complaint, Donnelly was unable to make good faith argument as to the merits of the

Partition Case.

## MLRPC 3.3(a)(1) (Candor Tower the Tribunal); MLRPC 8.1(a) (Disciplinary Matters); MLRPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

"A lawyer shall not knowingly[] make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]"  MLRPC 3.3(a)(1).

MLRPC 8.1 states:

An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

(a) knowingly make a false statement of material fact; or

(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

"It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit[,] or misrepresentation[.]"  MLRPC 8.4(c).

The hearing judge made separate findings with respect to MLRPC 3.3(a)(1), 8.1, and 8.4(c).  Because the conduct at issue overlaps, we discuss these MLRPC together.

As to MLRPC 3.3(a)(1) and 8.4(c), the hearing judge concluded that, in the Pier Case, Donnelly knowingly made false statements to the circuit court after his discharge on May 17, 2013.  Specifically, the hearing judge determined that, in violation of MLRPC 3.3(a)(1) and 8.4(c), Donnelly filed a supplemental memorandum of law in support of the motion for declaratory judgment after he was terminated, and appeared at a hearing in the

- 75 -

Pier Case on June 17, 2013. The hearing judge also found that, on July 24, 2013, Donnelly filed a motion for entry of final judgment in the Pier Case. The hearing judge concluded that Donnelly failed to promptly notify the circuit court of the Assignment of Contract Rights after its execution on December 4, 2012, and thus failed to inform the circuit court of the identity of the real party in interest.

As to MLRPC 8.1, the hearing judge concluded that Donnelly falsely represented that he had "served as counsel for Solomons One[] from August, 2005 until discharged by [Solomon One's] members on May 17, 2013[,]" and that the Attorney-Client Agreement was authorized by members who owned a majority of Solomons One. Although the hearing judge did not specify a section of MLRPC 8.1, MLRPC 8.1(a) forbids "knowingly mak[ing] a false statement of material fact" "in connection with a disciplinary matter[.]"

The hearing judge concluded that Donnelly's conduct with regard to the Assignment of Contract Rights, unauthorized filing of the complaint in the Partition Case, continued representation of Solomons One after May 17, 2013, and allegedly false representations regarding authorization of the Attorney-Client Agreement were violations of MLRPC 8.4(c). The hearing judge concluded that Donnelly's use of the Assignment of Contract Rights was dishonest because he allegedly used it to divest Solomons One of an asset, and that his attempt to bind Solomons One to an Attorney-Client Agreement was also done in a dishonest and deceitful manner.

The hearing judge's conclusions that Donnelly violated 3.3(a)(1), 8.1, and 8.4(c) are not supported by clear and convincing evidence. Concerning Donnelly's representation in the Pier Case, at the May 17, 2013 meeting of Solomons One's members, members who

owned a majority of Solomons One revoked the MOU, in which Solomons One retained Donnelly as its counsel for general purposes. The Attorney-Client Agreement provided an independent basis for Donnelly to represent Solomons One in the Pier Case.

As to the Assignment of Contract Rights, on December 4, 2012, Donnelly executed the Assignment, and, on September 3, 2013, Donnelly filed the substitution of the trustee, in which he informed the circuit court of the Assignment of Contract Rights. The nine-month delay, without more, does not establish that Donnelly engaged in dishonesty toward the circuit court. The Assignment of Contract Rights necessitated that Donnelly file a substitution of the trustee as the plaintiff in the case. The action that the circuit court needed to take as a result of the Assignment of Contract Rights was to replace Solomons One with Donnelly, as trustee, on the list of plaintiffs. Undoubtedly, Donnelly was required to file a notice of substitution of party. There is simply insufficient evidence that Donnelly's failure to timely do so was an intentional act of dishonesty. There was no evidence that Donnelly executed the Assignment of Contract Rights to divest Solomons One of its right to build a pier, or to enable himself to continue to pursue the Pier Case solely for his personal enrichment.

With regard to MLRPC 8.1, in Donnelly's August 27, 2013 letter to Bar Counsel, Donnelly stated that he "served as counsel for Solomons One[] from August[] 2005 until discharged by [Solomons One's] members on May 17, 2013." This statement was accurate. At the May 17, 2013 meeting, members who owned a majority of Solomons One revoked the MOU, in which Solomons One retained Donnelly as its counsel for general purposes. It was not dishonest for Donnelly to state that he had been discharged as

- 77 -

Solomons One's counsel on May 17, 2013, and to believe that he continued to represent Solomons One in the Pier Case pursuant to the Attorney-Client Agreement.

Although the hearing judge concluded that Donnelly stated in his August 27, 2013 letter to Bar Counsel that the Attorney-Client Agreement "was authorized by the Greenbergs, McNelis, and Erickson-File," and that this statement was materially false, the record reflects that, in actuality, in his August 27, 2013 letter to Bar Counsel, Donnelly stated: "The contingent fee agreement was agreed to by 96 2/3% of the members (Donnelly, Steffen[,] and the Greenbergs)." As such, Donnelly did not, as the hearing judge found, allege that the Greenbergs and Erickson-File had authorized the Attorney-Client Agreement in advance. In other words, Donnelly did not state that the Greenbergs and Erickson-File had concurred in the Attorney-Client Agreement contemporaneous with, or before, its making. Rather, Donnelly's advisement to Bar Counsel that the Greenbergs had agreed to the Attorney-Client Agreement was consistent with his having sent the letter of August 23, 2012 to Dr. Greenberg, describing the contingency fee agreement and the waiver of advance fees under the Attorney-Client Agreement. Donnelly also contended that he had attached the Attorney-Client Agreement to the August 23, 2012 letter and forwarded it to Dr. Greenberg, and that he had forwarded the same documents to Guenther, Erickson-File's and McNelis's counsel. It is undisputed that, at the disciplinary hearing, Dr. Greenberg acknowledged receipt of Donnelly's August 23, 2012 letter. As such, Dr. Greenberg knew of the Attorney-Client Agreement and did not object to it. Under these circumstances, we do not find clear and convincing evidence to support a violation of MLRPC 8.1 and 8.4(c) with respect to Donnelly's statement regarding the Attorney-Client

- 78 -

Agreement.

The hearing judge determined that Donnelly violated 8.4(c) by filing the complaint in the Partition Case without authorization. We disagree. Other than finding that Donnelly's "unauthorized filing of the partition suit" constituted a violation of MLRPC 8.4(c), the hearing judge provided no further discussion of the matter. The record demonstrates that lawyers for McNelis, who was a member of Solomons One and the defendant in the action, were served with the complaint in the Partition Case, which was filed on May 2, 2013. Without additional information, we decline to determine that Donnelly's filing of a lawsuit, albeit without the authorization of members who owned a majority of Solomons One, and having it served on a member of Solomons One as the defendant in the action, constituted an act of dishonesty, fraud, deceit, or misrepresentation.

## MLRPC 4.2(a) (Communication with Person Represented by Counsel)

MLRPC 4.2(a) states, in pertinent part:

[I]n representing a client, a lawyer shall not communicate about the subject of the representation with a person who the lawyer knows is represented in the matter by another lawyer unless the lawyer has the consent of the other lawyer or is authorized by law or court order to do so.

The hearing judge concluded that Donnelly did not violate MLRPC 4.2, without specifying a section of MLRPC 4.2. In the Petition for Disciplinary or Remedial Action, Bar Counsel charged Donnelly with violating MLRPC 4.2(a). The hearing judge concluded that clear and convincing evidence did not establish that Donnelly violated MLRPC 4.2 in directly communicating with Erickson-File and McNelis. We agree. The hearing judge found that Donnelly communicated with Solomons One's other members in

his capacity as a member of Solomons One, as opposed to his capacity as an attorney. And, when e-mailing Solomons One's other members, Donnelly copied their counsel.

## MLRPC 4.4(a) (Respect for Rights of Third Persons)

"In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining evidence that violate the legal rights of such a person." MLRPC 4.4(a).

The hearing judge concluded that Donnelly did not violate MLRPC 4.4, and did not specify a section of MLRPC 4.4. Bar Counsel charged Donnelly with violating MLRPC 4.4(a). The hearing judge correctly concluded that clear and convincing evidence did not establish that Donnelly violated MLRPC 4.4(a) in representing Solomons One. The hearing judge correctly observed that, while Donnelly was representing Solomons One, its members were not third persons in relation to him.

## MLRPC 8.4(b) (Criminal Act)

"It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]" MLRPC 8.4(b).

In his discussion of MLRPC 8.4, the hearing judge stated: "This Court does not find that clear and convincing evidence was presented that [Donnelly] committed a criminal act that reflects adversely on his honesty, trustworthiness[,] or fitness as a lawyer." The hearing judge correctly concluded that clear and convincing evidence did not establish that Donnelly violated MLRPC 8.4(b). Bar Counsel does not except to this conclusion.

**MLRPC 8.4(d) (Conduct That Is Prejudicial to the Administration of Justice)**

"It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice[.]" MLRPC 8.4(d). "Generally, a lawyer violates MLRPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Chanthunya, 446 Md. at 602, 133 A.3d at 1049 (cleaned up).

The hearing judge concluded that Donnelly violated MLRPC 8.4(d) by violating MLRPC 1.7, 3.3, and 8.4(c). Although we determine that Donnelly did not violate these MLRPC, we are satisfied that clear and convincing evidence supports the conclusion that, with his conduct in violating MLRPC 1.2(a), 1.4(a)(2), 1.5(b), 1.5(c), 1.16(a)(3), and 1.16(d), Donnelly also violated MLRPC 8.4(d). In sum, Donnelly's conduct was such that it would negatively affect a reasonable person's perception of the legal profession.

**MLRPC 8.4(a) (Violating the MLRPC)**

"It is professional misconduct for a lawyer to[] violate . . . the" MLRPC. MLRPC 8.4(a). Clear and convincing evidence supports the hearing judge's conclusion that Donnelly violated MLRPC 8.4(a). As discussed above, Donnelly violated MLRPC 1.2(a), 1.4(a)(2), 1.5(b), 1.5(c), 1.16(a)(3), 1.16(d), and 8.4(d).

**(D) Sanction**

Bar Counsel recommends that we disbar Donnelly, who asks us to dismiss the attorney discipline proceeding.

In Attorney Grievance Comm'n v. Allenbaugh, 450 Md. 250, 277-78, 148 A.3d 300, 316-17 (2016), this Court stated:

This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the MLRPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the MLRPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the MLRPC; and (14) unlikelihood of repetition of the misconduct.

(Cleaned up).

In Attorney Grievance Comm'n v. Hill, 398 Md. 95, 103, 104-05, 919 A.2d 1194, 1198, 1199 (2007), a lawyer violated MLRPC 1.3, 1.4, 8.1(b), and 8.4(d), and this Court suspended the lawyer from the practice of law in Maryland for thirty days. Hill involved misconduct with regard to the representation of two clients in separate matters. See id. at 97, 919 A.2d at 1195. In one matter, a client retained the lawyer to prepare an Eligible Domestic Relations Order, which was necessary for the client to obtain half of his ex-wife's retirement benefits. See id. at 98, 919 A.2d at 1195. Despite his client's numerous requests that he do so, the lawyer failed to prepare the order before his client's remarriage, which rendered his client ineligible to obtain half of his ex-wife's retirement benefits. See id. 99, 919 A.2d at 1195-96. After the lawyer's client filed a complaint against him, Bar Counsel sought a response by sending the lawyer four letters and telephoning the lawyer three times. See id. at 99, 919 A.2d at 1196. The lawyer did not respond to the letters or telephone calls for nearly four months, after which the lawyer finally provided a written response. See id. at 99, 919 A.2d at 1196.

In another matter, a client retained the lawyer to represent him in a domestic relations case. See id. at 99, 919 A.2d at 1196. At a pretrial conference before a master, the lawyer's client and his ex-wife reached an agreement, pursuant to which the lawyer agreed to submit a consent order within two weeks. See id. at 99, 919 A.2d at 1196. The lawyer failed to do so, despite telephone calls from the master's office and telephone calls and letters from the lawyer's client. See id. at 99-100, 919 A.2d at 1196. After six months, a circuit court ordered the lawyer to show cause why sanctions and costs should not be imposed against him. See id. at 100, 919 A.2d at 1196. The lawyer did not inform his

client of the show cause order. See id. at 100, 919 A.2d at 1196. The lawyer prepared a consent order and sent it to opposing counsel. See id. at 100, 919 A.2d at 1196. Once both the lawyer and opposing counsel had signed the consent order, the lawyer submitted it to the circuit court. See id. at 100, 919 A.2d at 1196. The lawyer did not inform his client that he had prepared a consent order and submitted it to the circuit court without his client's review. See id. at 100, 919 A.2d at 1196. After the lawyer's client filed a complaint against him, on two occasions, Bar Counsel requested the lawyer's file on his client's case. See id. at 100, 919 A.2d at 1196. The lawyer failed to comply with Bar Counsel's requests. See id. at 100, 919 A.2d at 1196.

Neither party excepted to the hearing judge's conclusions that, in the first matter, the lawyer violated MLRPC 8.4(d) through the lawyer's inaction, and that, in both matters, the lawyer violated MLRPC 1.3 by failing to timely prepare documents; MLRPC 1.4 by failing to keep his clients reasonably informed; and 8.1(b) by failing to timely respond to Bar Counsel's requests. See id. at 102, 100-01, 919 A.2d at 1198, 1197. As to aggravating factors, the lawyer had prior attorney discipline in the form of "two dismissals with a warning[.]" Id. at 104-05, 919 A.2d at 1199. As to mitigating factors, the hearing judge found that the lawyer's inattention in the two matters was partially caused by his alcohol abuse, his arrest for driving under the influence, and his mother-in-law's illness and death. See id. at 102, 919 A.2d at 1197. Additionally, the lawyer expressed remorse, and the master's administrative aide testified via affidavit that the lawyer's behavior was out-of-character for him. See id. at 105, 919 A.2d at 1199. This Court determined that, in light of these circumstances, it could "be inferred that the [lawyer]'s misconduct [wa]s not likely

- 84 -

to be repeated." Id. at 105, 919 A.2d at 1199. Ultimately, this Court concluded that a thirty-day suspension from the practice of law in Maryland would ensure "that the public w[ould] be protected[.]" Id. at 105, 919 A.2d at 1199.

In Attorney Grievance Comm'n v. Shuler, 443 Md. 494, 508, 513, 117 A.3d 38, 47, 50 (2015), reconsideration denied (July 24, 2015), this Court concluded that a lawyer had violated MLRPC 1.3, 1.4(a)(2), and 8.4(d), and suspended the lawyer from the practice of law in Maryland for thirty days, "with a condition precedent to reinstatement that [the lawyer] satisfactorily demonstrate, by the report of a health care professional (acceptable to the Commission and, ultimately, this Court) or other appropriate evidence, that she is mentally and physically competent to resume the practice of law." In Shuler, id. at 497, 117 A.3d at 41, the lawyer failed to appear at oral argument before the Court of Special Appeals. The lawyer telephoned the Office of the Clerk of the Court of Special Appeals, stated that she felt too ill to travel that morning, and requested that oral argument be rescheduled. See id. at 497, 117 A.3d at 41. Subsequently, the lawyer telephoned the Office of the Clerk to check her client's case's status. See id. at 498, 117 A.3d at 41. The lawyer failed to take any further action in her client's case. See id. at 498, 117 A.3d at 41. For example, the lawyer failed to file a written explanation for her failure to appear at oral argument, or a written request that oral argument be rescheduled. See id. at 498, 117 A.3d at 41. After the Court of Special Appeals treated the lawyer's client's case as "submitted on brief" and affirmed the trial court's judgment, the lawyer failed to inform her client that he had not prevailed in the appeal. See id. at 498, 117 A.3d at 41.

This Court concluded that the lawyer violated MLRPC 1.3 by failing to act with

reasonable diligence to ameliorate her failure to appear at oral argument; MLRPC 1.4(a)(2) by failing to inform her client that he had not prevailed in the appeal; and MLRPC 8.4(d) by essentially abandoning her representation of her client. See id. at 508, 117 A.3d at 47. There were two mitigating factors: the absence of a dishonest or selfish motive; and personal problems, in the form of a history of physical illnesses. See id. at 508, 117 A.3d at 47. There were four aggravating factors: multiple violations of the MLRPC; bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with the hearing judge's orders to respond to a motion to compel and to provide discovery materials; prior attorney discipline, in the form of an informal admonishment by Bar Counsel of the District of Columbia for, among other things, failing to appear at hearings; and a pattern of misconduct, as, in both Shuler and the attorney discipline proceeding in the District of Columbia, the lawyer stated that she failed to appear at a hearing due to illness. See id. at 509, 117 A.3d at 47-48.

This Court explained why a thirty-day suspension was the appropriate sanction, as follows:

> Although occasionally missing court dates due to illness may be excusable, doing so repeatedly within a five-month period and without sufficient amelioration is not. Despite having been informally admonished by Bar Counsel of the District of Columbia, [the lawyer] once again missed a court date and failed to ameliorate her failure to appear; thus, we must do more than slap [the lawyer] on the wrist to protect the public and to impress upon [the lawyer] the importance of remedying failures to appear and managing health issues so that they do not cause violations of the MLRPC.

Id. at 510, 117 A.3d at 48. This Court conditioned the lawyer's reinstatement on a demonstration of mental and physical competency to resume the practice of law because

the lawyer had a history of physical illnesses, and her filings in this Court "include[d] several concerning assertions[,]" such as a nonsensical contention that the attorney discipline proceeding violated her right "to practice her religious beliefs[.]" Id. at 511-12, 117 A.3d at 49.

Here, Donnelly violated MLRPC 1.2(a), 1.4(a)(2), 1.5(b), 1.5(c), 1.16(a)(3), 1.16(d), and 8.4(d). Donnelly violated MLRPC 1.2(a) by filing the complaint in the Partition Case and executing the Assignment of Contract Rights without authorization. Donnelly violated 1.4(a)(2) by failing to provide the complaint in the Partition Case and the Assignment of Contract Rights to Solomons One's other members. Donnelly violated MLRPC 1.5(b) by failing to communicate changes to the fee arrangement that were set forth in the Assignment of Contract Rights. Donnelly violated MLRPC 1.5(c) by not having the Attorney-Client Agreement, which called for a contingency fee, signed by members who owned a majority of Solomons One. Donnelly violated MLRPC 1.16(a)(3) by failing to withdraw from the Partition Case after the MOU was revoked, and after he was expressly told to do so. Donnelly violated MLRPC 1.16(d) by failing to promptly surrender Solomons One's papers to its new counsel. Donnelly violated MLRPC 8.4(d) by engaging in conduct that would negatively affect the public's perception of the legal profession.

As to the injury that Donnelly's misconduct caused or could have caused, the hearing judge found that the Assignment of Contract Rights did not cause substantial financial harm to Solomons One, and that Donnelly was successful in the Pier Case.

We note four aggravating factors: substantial experience in the practice of law, a

pattern of misconduct, multiple violations of the MLRPC, and a refusal to acknowledge the misconduct's wrongful nature. We note two mitigating factors: the absence of prior attorney discipline, and unlikelihood of repetition of the misconduct.[21]

In light of the absence of substantial financial harm to Solomons One, the lack of prior attorney discipline, and the circumstance that this conduct is unlikely to recur, we conclude that a thirty-day suspension is the appropriate sanction for Donnelly's misconduct. In our view, this sanction will impress upon Donnelly, and all other members of the Bar of Maryland, the necessity of obtaining clients' authorization before taking important actions, providing important documents to clients, communicating changes in fee arrangements to clients, and withdrawing from cases and surrendering files in a timely manner after clients terminate the representation.

The instant case bears a few similarities to Hill, 398 Md. at 105, 919 A.2d at 1199, and Shuler, 443 Md. at 513, 117 A.3d at 50, in each of which this Court imposed a thirty-day suspension. Like the lawyers in Hill, 398 Md. at 104, 919 A.2d at 1199, and Shuler, 443 Md. at 508, 117 A.3d at 47, Donnelly violated MLRPC 1.4 by failing to properly communicate with a client, and violated 8.4(d) by engaging in conduct that was prejudicial to the administration of justice. Unlike Donnelly, the lawyers in Hill, 398 Md. at 104, 919

---

[21]Although not a mitigating factor found by the hearing judge, we conclude that the conduct in this case is unlikely to be repeated, as this case arose from the unique circumstance that Donnelly served as the lawyer for an LLC of which he was also a member, and he and the LLC owned adjacent waterfront properties for which there was a right to build a pier. Donnelly has been a member of the Bar of Maryland for more than thirty-five years, and has no prior attorney discipline. The distinct circumstances that gave rise to the misconduct in this case are unlikely to recur.

A.2d at 1199, and Shuler, 443 Md. at 508, 117 A.3d at 47, also violated MLRPC 1.3, and the lawyer in Hill violated MLRPC 8.1(b) as well. At the same time, unlike the lawyers in Hill and Shuler, Donnelly violated MLRPC 1.2(a), 1.5(b), 1.5(c), 1.16(a)(3), and 1.16(d). In all three cases, there were obviously multiple violations of the MLRPC, which is an aggravating factor. Both Donnelly and the lawyer in Shuler, 443 Md. at 509, 117 A.3d at 47, engaged in a pattern of misconduct, which is another aggravating factor. Although the lawyer in Hill was not expressly found to have engaged in a pattern of misconduct, he violated multiple of the same MLRPC in two different matters. See Hill, 398 Md. at 104, 919 A.2d at 1199. Unlike the misconduct of the lawyers in Hill, 398 Md. at 104-05, 919 A.2d at 1199, and Shuler, 443 Md. at 509, 117 A.3d at 47, Donnelly's misconduct is not aggravated by prior attorney discipline and/or bad faith obstruction of the attorney discipline proceeding. But, unlike the misconduct of the lawyers in Hill, 398 Md. at 105, 919 A.2d at 1199, and Shuler, 443 Md. at 508, 117 A.3d at 47, Donnelly's misconduct is not mitigated by personal problems, the absence of a dishonest or selfish motive, and/or remorse.

Considering all of the similarities and differences between this case and Hill and Shuler, and considering this case as a whole, we determine that Donnelly's misconduct warrants the sanction of a thirty-day suspension. In other words, as we expressly concluded in Hill, 398 Md. at 105, 919 A.2d at 1199, and Shuler, 443 Md. at 510, 117 A.3d at 48, we are satisfied that a thirty-day suspension will protect the public.

In closing, we take the opportunity to provide guidance concerning the circumstance of a lawyer filing with Bar Counsel a complaint against another lawyer regarding his or her

conduct in ongoing litigation in which the complaining lawyer is opposing counsel.[22]

Under such circumstances, we believe that it would be advisable for Bar Counsel to await the conclusion of the underlying litigation before determining whether an attorney discipline proceeding is warranted.[23] Following this procedure would avoid any perception that Bar Counsel and the attorney disciplinary process are being used to further the complaining attorney's interest in ongoing litigation. Cf. Attorney Grievance Comm'n v. Dyer, 453 Md. 585, 597, 162 A.3d 970, 976 (2017) ("As the litigation progressed, opposing counsel . . . filed complaints against [the respondents] with the Attorney Grievance Commission, Petitioner, alleging misconduct related to the litigation.").

Regardless of whether Bar Counsel awaits the disposition of litigation in which a lawyer allegedly engaged in misconduct, Bar Counsel should conduct an investigation that is independent of the existing litigation.[24] In other words, Bar Counsel should

---

[22]On March 29, 2016, Bar Counsel initiated this attorney discipline proceeding. At that time, Donnelly's appeal of the Bankruptcy Court's judgment in the Adversary Case was still pending in the United States District Court for the District of Maryland. See Solomons One, 2016 WL 1464548, at *1. The lawyers who represented Solomons One in the Bankruptcy Case and the Adversary Case were not the same as the lawyers who filed complaints against Donnelly with Bar Counsel (Kneeland and Cumberland). That said, all of these lawyers answered to some or all of the same people—namely, the Greenbergs, Erickson-File, and McNelis.

[23]Where a lawyer's conduct in ongoing litigation poses an immediate threat to the public or the public's confidence in the legal profession, Bar Counsel may, in its discretion, initiate an attorney discipline proceeding against the lawyer before the litigation concludes.

[24]At oral argument, Assistant Bar Counsel was asked to respond to Donnelly's allegation that Bar Counsel failed to interview Solomons One's other members during the investigation of Kneeland's and Cumberland's complaints. Assistant Bar Counsel responded that she "had no reason to interview" Solomons One's members before the discovery phase of this attorney discipline proceeding because Solomons One's members had filed affidavits in the Bankruptcy Case and the Adversary Case. Assistant Bar Counsel

independently determine whether any alleged misconduct occurred, rather than relying exclusively on affidavits, and/or other sources of factual allegations, that are derived from the underlying litigation. In litigation, affidavits, although accurate, may be drafted by lawyers for the signature of the affiants, and the memories of people who are involved in litigation may fade or change over time. With certainty, the best practice would be for Bar Counsel, in determining whether to file a petition for disciplinary or remedial action, to conduct an independent investigation and interview individuals who allegedly have evidence of a lawyer's misconduct, even if the individuals have been involved in prior litigation and given testimony or signed affidavits.

For the above reasons, we suspend Donnelly from the practice of law in Maryland for thirty days. The suspension will begin thirty days after the date on which this opinion is filed.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST VERNON CHARLES DONNELLY.**

---

also stated that she had obtained e-mails to and from Donnelly, as well as "representations from" Solomons One's members' counsel. Assistant Bar Counsel stated that "it would've been a waste of time and effort by the Attorney Grievance Commission to repeat what was already done prior to" the filing of Kneeland's and Cumberland's complaints. We disagree.